IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **Dakota Girls, LLC** | : | |
| d/b/a The Goddard School of Grove City | : | |
| 2585 London-Groveport Road | : | |
| Grove City, Ohio 43123 | : | |
| | : | |
| and | : | |
| | : | Case No. |
| **Elliott Care, LLC** | : | |
| d/b/a The Goddard School of Worthington | : | Judge |
| 694 Mount Airyshire Boulevard | : | |
| Columbus, Ohio 43235, | : | Magistrate Judge |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| **Philadelphia Indemnity Insurance Company** | : | **JURY DEMAND** |
| c/o Statutory Agent, Gil Apelis | : | **ENDORSED HEREON** |
| CT Corporation System | : | |
| 1300 East 9th Street, Suite 1010 | : | |
| Cleveland, Ohio 44114, | : | |
| | : | |
| Defendant. | : | |

## COMPLAINT

This case arises out of Philadelphia Indemnity Insurance Company's bad faith decision to deny coverage to Plaintiffs—which own and operate private preschools in Ohio—despite Plaintiffs' payment of thousands of dollars in premiums and clear policy language providing coverage. In addition to seeking damages for breach of contract and bad faith, Plaintiffs seek a declaratory judgment that Philadelphia Indemnity Insurance Company has a duty to pay losses Plaintiffs have suffered as a result of being shut down in connection with the COVID-19 global pandemic.

## PARTIES

1. Plaintiff Dakota Girls, LLC d/b/a The Goddard School of Grove City is an Ohio limited liability company that operates a private preschool at 2585 London Groveport Road, Grove City, Ohio 43123.

2. Plaintiff Elliott Care, LLC d/b/a The Goddard School of Worthington is an Ohio limited liability company that operates a private preschool at 694 Mount Airyshire Boulevard, Columbus, Ohio 43235.

3. Defendant Philadelphia Indemnity Insurance Company ("PIIC") is a legal entity organized in Pennsylvania and is authorized by the State of Ohio to sell insurance policies to residents of Ohio.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this case under 28 U.S.C. § 1332 because the parties are citizens of different states, and because the amount-in-controversy exceeds $75,000.

5. PIIC is subject to personal jurisdiction in this Court because the cause of action arises from PIIC's transacting business in Ohio, PIIC has contracted to supply services in Ohio, and PIIC contracted to insure a business or risk located within Ohio at the time of contracting.

6. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## FACTUAL ALLEGATIONS

### Background

7. In return for the payment of premiums, PIIC issued policies of insurance ("the Policies") to the Plaintiffs. Copies of the Policies are attached to this Complaint. The Policies

provide insurance coverage for "Covered Properties" (a term defined in the Policies) for the periods relevant to this action.

8. Plaintiffs have performed their obligations under their respective insurance Policies with PIIC, including the payment of premiums.

9. In many parts of the world, property insurance is sold on a specific peril basis. Such policies cover a risk of loss if that risk of loss is specifically listed in the policy. Many if not most property policies sold in the United States, however, including policies sold by PIIC, are all-risk policies. In contrast to specific peril policies, these types of policies cover all risks of loss except for risks that are expressly and specifically excluded.

10. The Policies contain a Building and Personal Property coverage form. In that coverage form, PIIC contractually agreed to "pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss." The Policies contain a form titled "Causes of Loss – Special Form" through which PIIC agreed that "[w]hen Special is shown in the Declarations, Covered Causes of Loss means direct physical loss unless the loss is excluded or limited in this policy."

11. Plaintiffs are entitled to coverage in this matter under the Building and Personal Property coverage form.

12. The Building and Personal Property coverage form does not exclude or limit coverage for losses from viruses and/or pandemics, and there is no exclusion under the Policies that precludes coverage in this matter.

13. The Policies contain a "Business Income" coverage form. In the Business Income coverage form, PIIC contractually agreed to pay for Plaintiffs' actual loss of Business Income sustained due to the necessary "'suspension' of [their] 'operations' during the 'period of

restoration' caused by direct physical loss of or damage to" properties described in the Policies. Under the Business Income coverage form, a "slowdown or cessation" of business activities at the Covered Property is a "suspension" under the policy, for which PIIC agreed to pay for loss of Business Income during the "period of restoration" that occurs within 24 consecutive months after the date of direct physical loss or damage.

14. "Business Income" under the Policies means the "Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred" and "Continuing normal operating expenses incurred, including payroll."

15. Each Plaintiff has suffered loss of Business Income as a result of a Covered Cause of Loss under that Plaintiff's insurance policy issued by PIIC.

16. Plaintiffs are entitled to coverage in this matter under the Business Income coverage form.

17. The Business Income coverage form does not exclude or limit coverage for losses from viruses and/or pandemics and there is no exclusion under the Policies that precludes coverage in this matter.

18. The Policies contain an additional coverage called "Civil Authority" coverage. This coverage is in addition to, and does not replace, other applicable coverage under the Policies.

19. Through the additional Civil Authority coverage, PIIC contractually agreed that when a Covered Cause of Loss causes damage to property other than property at the described premises in the Policies, PIIC would "pay for the actual loss of Business Income [Plaintiffs] sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply: (1) Access to the area

immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and (2) The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property."

20. Plaintiffs have suffered losses that are covered by the Civil Authority coverage under the Policies.

21. The presence of COVID-19 has caused authorities throughout the United States to issue orders requiring the suspension of business at a wide range of establishments. The authorities that have issued such orders (the "Closure Orders") include authorities who have claimed jurisdiction to suspend the operations of Plaintiffs' businesses.

22. One or more Closure Orders have prohibited access to and the operation of each Plaintiff's Covered Property, and the area immediately surrounding each Covered Property, in response to dangerous physical conditions caused by a Covered Cause of Loss.

23. Losses caused by a pandemic, including losses caused by the novel coronavirus known as COVID-19 and/or losses caused by a Closure Order, are a Covered Cause of Loss under the Policies.

24. Each Plaintiff has submitted or attempted to submit a claim with PIIC under that Plaintiff's insurance policy. PIIC has breached its obligations under the Policies, including by refusing to pay the claims and/or failing to properly and timely investigate the claims.

25. A declaratory judgment determining that coverage is provided under the Policies will prevent Plaintiffs from being left without vital coverage that was obtained for the purpose of protecting Plaintiffs' businesses and is now required to ensure the survival of those businesses.

### COVID-19 Global Pandemic and the State of Ohio's Response

26. In or about January 2020, the Center for Disease Control and Prevention ("CDC") began responding to an outbreak of a respiratory disease that was first detected in China, and which has now been detected in more than 100 locations internationally, including the United States.

27. The virus has been named "SARS-Cov-2," and the disease has been named coronavirus disease 2019 (abbreviated "COVID-19").

28. On January 30, 2020, the World Health Organization ("WHO") declared the outbreak a "public health emergency of international concern."

29. On January 31, 2020, Health and Human Services Secretary Alex M. Azar II declared a public health emergency for the United States to aid the nation's healthcare community in responding to COVID-19.

30. On March 9, 2020, Ohio Governor Mike DeWine issued Executive Order 2020-01 D, "Declaring a State of Emergency," in response to the growing COVID-19 public health crisis.

31. On March 11, 2020, WHO publicly characterized COVID-19 as a global "pandemic" requiring urgent and aggressive action to control the spread of the virus.

32. On March 22, 2020, Governor DeWine announced the Ohio Department of Health Director's Stay at Home Order, effective March 23, 2020 at 11:59 p.m., that all Ohioans were to stay-at-home unless engaged in essential work or activity.

33. Also on March 22, 2020, Governor DeWine announced that "all child care programs must close by 11:59 p.m. on Wednesday, March 25, 2020."

34. On March 24, 2020, Director of Health, Amy Acton, MD, MPH, signed a Director's Order to "Close Facilities Providing Child Care Services," which was effective at 11:59 p.m. on March 25, 2020.

35. The March 22, 2020 orders and the March 24, 2020 order are among the Closure Orders that have adversely affected Plaintiffs' Covered Properties and business operations.

36. Plaintiffs' childcare facilities were shut down as of March 25, 2020 at 11:59 p.m.

37. As of March 26, 2020, Plaintiffs have been shut down and remain out of business with no children or families in the schools.

38. The CDC has found that the COVID-19 virus can last on surfaces such as those in Plaintiffs' private preschools for up to seventeen (17) days, thereby "damaging" – those surfaces in the process.

39. Among other things, the nature and extent of COVID-19, and/or one or more Closure Orders, have rendered Plaintiffs' facilities uninhabitable and unusable and/or have caused direct physical loss of or damage to Plaintiffs' Covered Properties and business operations.

40. COVID-19 and/or one or more Closure Orders have caused direct physical loss of or damage to Plaintiffs' Covered Properties and business operations, requiring suspension of operations at the Covered Properties.

41. As a result of the circumstances described above, Plaintiffs are entitled to coverage under the Policies.

### Defendant PIIC's Delay and Denial of Plaintiffs' Claims

42. In late March, Plaintiffs made a formal claim to PIIC pursuant to the Policies and consistent with the terms and conditions of the Policies.

43. PIIC has indicated it will not be providing coverage and for many weeks has promised it will provide a final written answer regarding coverage under the Policies even though Plaintiffs' schools remain closed and Plaintiffs are in dire need of the insurance benefits to which Plaintiffs are entitled.

44. In bad faith, and contrary to the clear Policy language, PIIC has failed to provide coverage to Plaintiffs under the Policies and has failed to pay losses that Plaintiffs have suffered.

45. Plaintiffs have performed all conditions precedent on their part, including, but not limited, to paying the required premiums for the contracted coverage and timely filing a claim.

46. PIIC lacks good faith in handling Plaintiffs' claims, and Plaintiffs have suffered damages and had no other option but to seek legal counsel, thereby incurring litigation expenses and attorneys' fees.

### COUNT I – DECLARATORY JUDGMENT

47. Plaintiffs repeat and reallege the preceding allegations.

48. There exists an actual controversy between Plaintiffs and Defendant, which is justiciable in nature and involves rights and/or legal relations between the parties, as Defendant is denying coverage to Plaintiffs under the Policies as a result of Defendant's unilateral determination to avoid coverage irrespective of the fact that Plaintiffs' businesses are entitled to coverage, have been non-operational since at least March 26, 2020, and have suffered losses covered by the Policies.

49. Pursuant to 28 U.S.C. § 2201, Plaintiffs seek a declaratory judgment from this Court declaring that:

   a. Plaintiffs are entitled to coverage under the Policies in this matter;

   b. losses they have incurred in connection with the necessary interruption of their businesses due to the presence of COVID-19 and/or one or more Closure Orders are insured losses under the Policies; and

   c. Defendant is obligated to pay Plaintiffs for the full amount of the losses they have incurred in connection with the covered losses related to the necessary interruption of their businesses due to the presence of COVID-19 and/or one or more Closure Orders.

## **COUNT II – BAD FAITH**

50. Plaintiffs repeat and reallege the preceding allegations.

51. At all times relevant, Plaintiffs were insureds under the Policies.

52. The acts and omissions of PIIC as set forth above, and some yet to be discovered, constitute bad faith.

53. PIIC has a duty to act in good faith in investigating claims made by, and in making payment to, its insureds, including Plaintiffs, when claims are properly asserted and coverage exists under PIIC's policies.

54. PIIC has failed to properly investigate and determine Plaintiffs' claims.

55. Upon information and belief, PIIC has denied claims related to COVID-19 on a uniform basis, without individual bases or investigations.

56. PIIC's failure to properly investigate and determine Plaintiffs' claims is not in good faith.

57. PIIC has refused to pay Plaintiffs' claims.

58. PIIC's refusal to pay Plaintiffs' claims, as described above, is not in good faith.

59. PIIC's refusal to pay Plaintiffs' claims is not predicated upon any circumstances that reasonably justify a denial of Plaintiffs' claims.

60. PIIC's decision to refuse payment to Plaintiffs under the Policies is arbitrary and capricious, not supported by any rational or reasonable determination process, science or medicine, and is done solely in PIIC's own interests.

61. As a direct and proximate result of the bad faith exhibited by PIIC, Plaintiffs have been damaged in an amount to be determined at trial. In addition, Plaintiffs seek an award of punitive damages in an amount to be determined at trial and attorneys' fees for prosecuting this action.

62. Because of the bad faith of PIIC, Plaintiffs have sustained damages, expenses of litigation and attorneys' fees.

## COUNT III – BREACH OF CONTRACT

63. Plaintiffs repeat and reallege the preceding paragraphs.

64. Plaintiffs and PIIC entered into the Policies at issue in this case, and the Policies are valid contracts between Plaintiffs and PIIC.

65. Plaintiffs have complied with all applicable provisions of the Policies and/or have otherwise performed all of their obligations under the Policies, or those provisions have been waived by PIIC, or PIIC is estopped from asserting that Plaintiffs have not performed their contractual obligations.

66. PIIC has materially breached its contracts with Plaintiffs by failing to satisfy its obligations under the Policies as described above, including, but not limited to, by failing to

provide coverage and indemnify Plaintiffs for the losses suffered as a result of COVID-19 and/or the Closure Orders.

67. Plaintiffs have been damaged by PIIC's breach of contract.

**WHEREFORE**, Plaintiffs respectfully request the following relief against Defendant PIIC:

(a) A Declaratory Judgment that:

    i. Plaintiffs are entitled to coverage under the Policies in this matter;

    ii. losses Plaintiffs have incurred in connection with the necessary interruption of their businesses due to the presence of COVID-19 and/or the Closure Orders are insured losses under the Policies; and

    iii. Defendant is obligated to pay Plaintiffs for the full amount of the losses they have incurred in connection with the covered losses related to the necessary interruption of their businesses due to the presence of COVID-19 and/or the Closure Orders.

(b) Damages in an amount to be determined at trial but exceeding $75,000;

(c) Punitive damages, attorneys' fees, and costs; and

(d) Any other relief, whether legal or equitable, as the Court deems just and proper.

Respectfully submitted,

/s/ Charles H. Cooper, Jr.
Charles H. Cooper, Jr. (0037295)
Sean R. Alto (0087713)
Cooper & Elliott, LLC
2175 Riverside Drive
Columbus, Ohio 43221
(614) 481-6000
(614) 481-6001 (Facsimile)
chipc@cooperelliott.com
seana@cooperelliott.com

Attorneys for Plaintiffs
Dakota Girls, LLC and Elliott Care, LLC

## **JURY DEMAND**

Plaintiffs demand a trial by jury on all issues so triable.

/s/ Charles H. Cooper, Jr.