**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **Dakota Girls, LLC** | : | |
| **d/b/a The Goddard School of Grove City** | : | |
| **2585 London-Groveport Road** | : | |
| **Grove City, Ohio 43123** | : | |
| | : | |
| **and** | : | |
| | : | Case No. 2:20-cv-2035 |
| **Elliott Care, LLC** | : | |
| **d/b/a The Goddard School of Worthington** | : | Judge Sarah D. Morrison |
| **694 Mount Airyshire Boulevard** | : | |
| **Columbus, Ohio 43235,** | : | Magistrate Judge Jolson |
| | : | |
| **and** | : | |
| | : | |
| **Dublin Ashanik, LLC** | : | **JURY DEMAND** |
| **d/b/a The Goddard School of Dublin** | : | **ENDORSED HEREON** |
| **6239 Perimeter Drive** | : | |
| **Dublin, Ohio 43017** | : | |
| | : | |
| **and** | : | |
| | : | |
| **Educare of Greene, Inc.** | : | |
| **d/b/a The Goddard School of Uniontown** | : | |
| **1009 Boettler Road** | : | |
| **Uniontown, Ohio 44685** | : | |
| | : | |
| **and** | : | |
| | : | |
| **Campbell Family Childcare, Inc.** | : | |
| **d/b/a The Goddard School of New Albany** | : | |
| **5351 New Albany Road** | : | |
| **New Albany, Ohio 43054** | : | |
| | : | |
| **and** | : | |
| | : | |
| **Lillypad Learning Center, LLC** | : | |
| **d/b/a The Goddard School of Lewis Center** | : | |
| **8542 Owenfield Drive** | : | |
| **Powell, Ohio 43065** | : | |

| | |
|---|---|
|      **and** | : |
| | : |
| **Fuqua Norman, Inc.** | : |
| **d/b/a The Goddard School of Centerville** | : |
| **10685 Dayton Lebanon Pike** | : |
| **Dayton, Ohio 45458** | : |
| | : |
|      **and** | : |
| | : |
| **Eagle School of Hilliard Ohio, Inc.** | : |
| **d/b/a The Goddard School of Hilliard** | : |
| **6074 Parkmeadow Lane** | : |
| **Hilliard, Ohio  43026** | : |
| | : |
|      **and** | : |
| | : |
| **Powell Enterprises, Inc.** | : |
| **d/b/a The Goddard School of Westerville I** | : |
| **8750 Olde Worthington Road** | : |
| **Westerville, Ohio 43082** | : |
| | : |
|      **and** | : |
| | : |
| **Park Enterprises of Ohio, LLC** | : |
| **d/b/a The Goddard School of** | : |
|  **Canal Winchester** | : |
| **6405 Canal Street** | : |
| **Canal Winchester, Ohio 43110** | : |
| | : |
|      **and** | : |
| | : |
| **Park School of Dublin, LLC** | : |
| **d/b/a The Goddard School of Dublin** | : |
| **(Tuttle Crossing)** | : |
| **4980 Parkcenter Avenue** | : |
| **Dublin, Ohio 43017** | : |
| | : |
|      **and** | : |
| | : |
| **Fixari School of Pickerington, LLC** | : |
| **d/b/a The Goddard School of Pickerington** | : |
| **12916 Stonecreek Drive NW** | : |
| **Pickerington, Ohio 43147** | : |
| | : |
|      **and** | : |

| | |
|---|---|
| **Fixari School of Reynoldsburg, LLC** | : |
| **d/b/a The Goddard School of Reynoldsburg** | : |
| **40 Chris Perry Lane** | : |
| **Columbus, Ohio 43213** | : |
| | : |
|     **and** | : |
| | : |
| **Burkhold Enterprises, LLC** | : |
| **d/b/a The Goddard School of Powell** | : |
| **419 West Olentangy Street** | : |
| **Powell, Ohio 43065** | : |
| | : |
|     **and** | : |
| | : |
| **Park School of Gahanna, LLC** | : |
| **d/b/a The Goddard School of Gahanna** | : |
| **5515 Morse Road** | : |
| **Gahanna, Ohio 43230** | : |
| | : |
|     **Plaintiffs,** | : |
| | : |
|     v. | : |
| | : |
| **Philadelphia Indemnity Insurance Company** | : |
| **c/o Statutory Agent, Gil Apelis** | : |
| **CT Corporation System** | : |
| **4400 Easton Commons, Suite 125** | : |
| **Columbus, Ohio 43219,** | : |
| | : |
|     **Defendant.** | : |

## **FIRST AMENDED COMPLAINT**

    This case arises out of Philadelphia Indemnity Insurance Company's bad faith decision to deny coverage to Plaintiffs—which own and operate private preschools—despite Plaintiffs' payment of thousands of dollars in premiums and clear policy language providing coverage. In addition to seeking damages for breach of contract and bad faith, Plaintiffs seek a declaratory judgment that Philadelphia Indemnity Insurance Company has a duty to pay losses Plaintiffs have suffered as a result of being shut down in connection with the COVID-19 global pandemic.

3

## PARTIES

1. Plaintiffs operate private preschools in Ohio. Each plaintiff purchased and paid for insurance for its preschool from Philadelphia Indemnity Insurance Company.

2. Defendant Philadelphia Indemnity Insurance Company ("PIIC") is a legal entity organized in Pennsylvania and is authorized by various states, including the State of Ohio to sell insurance policies to residents of those states.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this case under 28 U.S.C. § 1332 because the parties are citizens of different states, and because the amount-in-controversy exceeds $75,000.

4. PIIC is subject to personal jurisdiction in this Court because the cause of action arises from PIIC transacting business in Ohio, PIIC has contracted to supply services in Ohio, and PIIC contracted to insure a business or risk located within Ohio at the time of contracting.

5. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## FACTUAL ALLEGATIONS

### Background

6. In return for the payment of premiums, PIIC issued policies of insurance ("the Policies") to the Plaintiffs. The Policies provide insurance coverage for "Covered Properties" (a term defined in the Policies) for the periods relevant to this action.

7. Plaintiffs have performed their obligations under their respective insurance Policies with PIIC, including the payment of premiums.

4

8. In many parts of the world, property insurance is sold on a specific peril basis. Such policies cover a risk of loss if that risk of loss is specifically listed in the policy. Many if not most property policies sold in the United States, however, including policies sold by PIIC, are all-risk policies. In contrast to specific peril policies, these types of policies cover all risks of loss except for risks that are expressly and specifically excluded. The insurance policies Plaintiffs purchased from PIIC were all-risk policies.

9. The Policies were and are contracts of adhesion in that Plaintiffs were given only the option to accept or refuse the Policies under the terms PIIC provided. Plaintiffs did not draft, create, or contribute to the language of the Policies.

10. The Policies contain a Building and Personal Property coverage form. In that coverage form, PIIC contractually agreed to "pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss." The Policies contain a form titled "Causes of Loss – Special Form" through which PIIC agreed that "[w]hen Special is shown in the Declarations, Covered Causes of Loss means direct physical loss unless the loss is excluded or limited in this policy."

11. The Policies do not define the term "direct physical loss of or damage to" and do not explain the distinction between "physical loss" and "damage." The use of the disjunctive "or" in the phrase "direct physical loss of or damage to" means that coverage is triggered if either a physical loss of property or damage to a Covered Property occurs. The concepts are separate and distinct and cannot be conflated.

12. Physical loss of, or damage to, a property may be reasonably interpreted to occur when a covered cause of loss threatens or renders property unusable or unsuitable for its intended purpose or unsafe for normal human occupancy and/or continued use.

13. Plaintiffs are entitled to coverage in this matter under the Building and Personal Property coverage form.

14. The Building and Personal Property coverage form does not exclude or limit coverage for losses from viruses and/or pandemics.

15. The Policies contain a "Business Income" coverage form. In the Business Income coverage form, PIIC contractually agreed to pay for Plaintiffs' actual loss of Business Income sustained due to the necessary "'suspension' of [their] 'operations' during the 'period of restoration' caused by direct physical loss of or damage to" properties described in the Policies. Under the Business Income coverage form, a "slowdown or cessation" of business activities at the Covered Property is a "suspension" under the policy, for which PIIC agreed to pay for loss of Business Income during the "period of restoration" that occurs within 24 consecutive months after the date of direct physical loss or damage.

16. "Business Income" under the Policies means the "Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred" and "Continuing normal operating expenses incurred, including payroll."

17. Each Plaintiff has suffered loss of Business Income as a result of a Covered Cause of Loss under that Plaintiff's insurance policy issued by PIIC.

18. Plaintiffs are entitled to coverage in this matter under the Business Income coverage form.

19. The Business Income coverage form does not exclude or limit coverage for losses from viruses and/or pandemics.

20. The Policies contain an additional coverage called "Civil Authority" coverage. This coverage is in addition to, and does not replace, other applicable coverage under the Policies.

21. Through the additional Civil Authority coverage, PIIC contractually agreed that when a Covered Cause of Loss causes damage to property other than property at the described premises in the Policies, PIIC would "pay for the actual loss of Business Income [Plaintiffs] sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply: (1) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and (2) The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property."

22. Plaintiffs have suffered losses that are covered by the Civil Authority coverage under the Policies.

23. The presence of COVID-19 has caused authorities throughout the United States to issue orders requiring the suspension of business at a wide range of establishments. The authorities that have issued such orders (the "Closure Orders") include authorities who have claimed jurisdiction to suspend the operations of Plaintiffs' businesses.

24. Throughout the United States, state and local authorities that have issued Closure Orders have recognized that the virus causes physical loss or damage. For example, a Closure Order issued in California explained "[t]his order is given because of the propensity of the virus

to spread person-to-person, and also because the virus physically is causing property loss or damage due to its proclivity to stay airborne and to attach to surfaces for prolonged periods of time." Similarly, a Closure Order issued by the governor of Illinois shut down restaurants "due to the virus's propensity to physically impact surfaces and personal property." Likewise, in New York City a Closure Order was issued "because of the propensity of the virus to spread person to person and also because the virus physically is causing property loss and damage."

25. One or more Closure Orders have prohibited access to and the operation of each Plaintiff's Covered Property, and the area immediately surrounding each Covered Property, in response to dangerous physical conditions caused by a Covered Cause of Loss.

26. Losses caused by a pandemic, including losses caused by the novel coronavirus known as COVID-19 and/or losses caused by a Closure Order, are a Covered Cause of Loss under the Policies.

27. Each Plaintiff has submitted or attempted to submit a claim with PIIC under that Plaintiff's insurance policy. PIIC has breached its obligations under the Policies, including by refusing to pay the claims and/or failing to properly and timely investigate the claims.

28. A declaratory judgment determining that coverage is provided under the Policies will prevent Plaintiffs from being left without vital coverage that was obtained for the purpose of protecting Plaintiffs' businesses and is now required to ensure the survival of those businesses.

### COVID-19 Global Pandemic and the State of Ohio's Response

29. In or about January 2020, the Center for Disease Control and Prevention ("CDC") began responding to an outbreak of a respiratory disease that was first detected in China, and which has now been detected in more than 100 locations internationally, including the United States.

30. The virus has been named "SARS-Cov-2," and the disease has been named coronavirus disease 2019 (abbreviated "COVID-19").

31. On January 30, 2020, the World Health Organization ("WHO") declared the outbreak a "public health emergency of international concern."

32. On January 31, 2020, Health and Human Services Secretary Alex M. Azar II declared a public health emergency for the United States to aid the nation's healthcare community in responding to COVID-19.

33. On March 9, 2020, Ohio Governor Mike DeWine issued Executive Order 2020-01 D, "Declaring a State of Emergency," in response to the growing COVID-19 public health crisis.

34. On March 11, 2020, WHO publicly characterized COVID-19 as a global "pandemic" requiring urgent and aggressive action to control the spread of the virus.

35. On March 13, 2020, the Ohio Director of Health, Dr. Amy Acton, issued an Order limiting access to Ohio's nursing homes and similar facilities. In her Order, Dr. Acton stated that the virus "can easily spread" and "individuals can get COVID-19 by touching a surface or object that has the virus on it and then touching their own mouth, nose or eyes."

36. On March 22, 2020, Governor DeWine announced the Ohio Department of Health Director's Stay at Home Order, effective March 23, 2020 at 11:59 p.m., that all Ohioans were to stay-at-home unless engaged in essential work or activity.

37. Also on March 22, 2020, Governor DeWine announced that "all child care programs must close by 11:59 p.m. on Wednesday, March 25, 2020."

38. On March 24, 2020, Director of Health, Amy Acton, MD, MPH, signed a Director's Order to "Close Facilities Providing Child Care Services," which was effective at

11:59 p.m. on March 25, 2020. The Order stated that facilities providing child care services were being closed "to avoid an imminent threat with a high probability of widespread exposure to COVID-19 with a significant risk of substantial harm to a large number of people in the general population."

39. The March 22, 2020 orders and the March 24, 2020 order are among the Closure Orders that have adversely affected Plaintiffs' Covered Properties and business operations.

40. Plaintiffs' childcare facilities were shut down as of March 25, 2020 at 11:59 p.m.

41. As of March 26, 2020, Plaintiffs have been shut down and remain out of business with no children or families in the schools. Plaintiffs anticipate being allowed to reopen in some fashion but will continue to experience losses.

42. The CDC has found that the COVID-19 virus can last on surfaces such as those in Plaintiffs' private preschools for up to seventeen (17) days, thereby "damaging" – those surfaces in the process.

43. Among other things, the nature and extent of COVID-19, and/or one or more Closure Orders, have rendered Plaintiffs' facilities uninhabitable and unusable and/or have caused direct physical loss of or damage to Plaintiffs' Covered Properties and business operations.

44. COVID-19 and/or one or more Closure Orders have caused direct physical loss of or damage to Plaintiffs' Covered Properties and business operations, requiring suspension of operations at the Covered Properties.

45. As a result of the circumstances described above, Plaintiffs are entitled to coverage under the Policies.

**Defendant PIIC's Delay and Denial of Plaintiffs' Claims**

46. In or around March 2020, Plaintiffs began making formal claims to PIIC pursuant to the Policies and consistent with the terms and conditions of the Policies.

47. PIIC has either denied the claims or otherwise indicated it will not be providing coverage under the Policies.

48. In bad faith, and contrary to the clear Policy language, PIIC has failed to provide coverage to Plaintiffs under the Policies and has failed to pay losses that Plaintiffs have suffered.

49. Plaintiffs have performed all conditions precedent on their part, including, but not limited, to paying the required premiums for the contracted coverage and timely filing claims.

50. PIIC lacks good faith in handling Plaintiffs' claims, and Plaintiffs have suffered damages and had no other option but to seek legal counsel, thereby incurring litigation expenses and attorneys' fees.

**COUNT I – DECLARATORY JUDGMENT**

51. Plaintiffs repeat and reallege the preceding allegations.

52. There exists an actual controversy between Plaintiffs and Defendant, which is justiciable in nature and involves rights and/or legal relations between the parties, as Defendant is denying coverage to Plaintiffs under the Policies as a result of Defendant's unilateral determination to avoid coverage irrespective of the fact that Plaintiffs' businesses are entitled to coverage, were non-operational for a period or periods of time beginning in or around March 26, 2020, and have suffered losses covered by the Policies.

53. Pursuant to 28 U.S.C. § 2201, Plaintiffs seek a declaratory judgment from this Court declaring that:

   a. Plaintiffs are entitled to coverage under the Policies in this matter;

    b. losses they have incurred in connection with the necessary interruption of their businesses due to the presence of COVID-19 and/or one or more Closure Orders are insured losses under the Policies; and

    c. Defendant is obligated to pay Plaintiffs for the full amount of the losses they have incurred in connection with the covered losses related to the necessary interruption of their businesses due to the presence of COVID-19 and/or one or more Closure Orders.

## COUNT II – BAD FAITH

54. Plaintiffs repeat and reallege the preceding allegations.

55. At all times relevant, Plaintiffs were insureds under the Policies.

56. The acts and omissions of PIIC as set forth above, and some yet to be discovered, constitute bad faith.

57. PIIC has a duty to act in good faith in investigating claims made by, and in making payment to, its insureds, including Plaintiffs, when claims are properly asserted and coverage exists under PIIC's policies.

58. PIIC has failed to properly investigate and determine Plaintiffs' claims.

59. Upon information and belief, PIIC has denied claims related to COVID-19 on a uniform basis, without individual bases or investigations.

60. PIIC's failure to properly investigate and determine Plaintiffs' claims is not in good faith.

61. PIIC has refused to pay Plaintiffs' claims even though Plaintiffs' claims are covered by the Policies.

62. PIIC's refusal to pay Plaintiffs' claims, as described above, is not in good faith.

63. PIIC's refusal to pay Plaintiffs' claims is not predicated upon any circumstances that reasonably justify a denial of Plaintiffs' claims.

64. PIIC's decision to refuse payment to Plaintiffs under the Policies is arbitrary and capricious, not supported by any rational or reasonable determination process, science or medicine, and is done solely in PIIC's own interests.

65. As a direct and proximate result of the bad faith exhibited by PIIC, Plaintiffs have been damaged in an amount to be determined at trial. In addition, Plaintiffs seek an award of punitive damages in an amount to be determined at trial and attorneys' fees for prosecuting this action.

66. Because of the bad faith of PIIC, Plaintiffs have sustained damages, expenses of litigation and attorneys' fees.

## COUNT III – BREACH OF CONTRACT

67. Plaintiffs repeat and reallege the preceding paragraphs.

68. Plaintiffs and PIIC entered into the Policies at issue in this case, and the Policies are valid contracts between Plaintiffs and PIIC.

69. Plaintiffs have complied with all applicable provisions of the Policies and/or have otherwise performed all of their obligations under the Policies, or those provisions have been waived by PIIC, or PIIC is estopped from asserting that Plaintiffs have not performed their contractual obligations.

70. PIIC has materially breached its contracts with Plaintiffs by failing to satisfy its obligations under the Policies as described above, including, but not limited to, by failing to provide coverage and indemnify Plaintiffs for the losses suffered as a result of COVID-19 and/or the Closure Orders.

71. Plaintiffs have been damaged by PIIC's breach of contract.

**WHEREFORE**, Plaintiffs respectfully request the following relief against Defendant PIIC:

(a) A Declaratory Judgment that:

    i. Plaintiffs are entitled to coverage under the Policies in this matter;

    ii. losses Plaintiffs have incurred in connection with the necessary interruption of their businesses due to the presence of COVID-19 and/or the Closure Orders are insured losses under the Policies; and

    iii. Defendant is obligated to pay Plaintiffs for the full amount of the losses they have incurred in connection with the covered losses related to the necessary interruption of their businesses due to the presence of COVID-19 and/or the Closure Orders.

(b) Damages in an amount to be determined at trial but exceeding $75,000;

(c) Punitive damages, attorneys' fees, and costs; and

(d) Any other relief, whether legal or equitable, as the Court deems just and proper.

Respectfully submitted,

/s/ Charles H. Cooper, Jr.
Charles H. Cooper, Jr.   (0037295)
Sean R. Alto   (0087713)
Cooper & Elliott, LLC
2175 Riverside Drive
Columbus, Ohio 43221
(614) 481-6000
(614) 481-6001 (Facsimile)
chipc@cooperelliott.com
seana@cooperelliott.com

Attorneys for Plaintiffs

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

/s/ Charles H. Cooper, Jr.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing First Amended Complaint was filed electronically and served electronically on the following counsel of record, this 26th day of May, 2020:

> Richard M. Garner, Esq.
> Sunny L. Horacek, Esq.
> Collins Roche Utley & Garner
> 655 Metro Place South
> Suite 200
> Dublin, Ohio 43017
> rgarner@cruglaw.com
> shoracek@cruglaw.com
>
> Attorneys for Defendant
> Philadelphia Indemnity Insurance Company

/s/ Charles H. Cooper, Jr.