**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **DAKOTA GIRLS, LLC et al.** | : | Case No. 2:20-cv-02035 |
| **Plaintiffs** | : | JUDGE Sarah D. Morrison |
| **v.** | : | MAGISTRATE JUDGE Kimberly A. Jolson |
| **PHILADELPHIA INDEMNITY INSURANCE COMPANY** | : | |
| **Defendant** | : | |

---

**MOTION TO DISMISS OF DEFENDANT PHILADELPHIA INDEMNITY INSURANCE COMPANY**

---

Defendant Philadelphia Indemnity Insurance Company ("PIIC") respectfully moves the Court, pursuant to Federal Rule of Civil Procedure 12(b)(6), for dismissal of Plaintiffs' Amended Complaint on the ground that it fails to state a claim upon which relief may be granted.

A Memorandum in Support of PIIC's Motion follows.

Respectfully submitted,

/s/ *Richard M. Garner*
Richard M. Garner (0061734)
Sunny Lane Horacek (0089178)
**Collins, Roche, Utley & Garner, LLC**
655 Metro Place South, Suite 200
Dublin, OH 43107
Telephone: (614) 901-9600
Facsimile: (614) 901-2733
Email: rgarner@cruglaw.com
shoracek@cruglaw.com

*Counsel for Defendant*
*Philadelphia Indemnity Insurance Company*

**TABLE OF CONTENTS AND SUMMARY OF ARGUMENT**

**MEMORANDUM IN SUPPORT** ........................................................................ 1

**I. FACTUAL BACKGROUND** ........................................................................ 4

**II. LEGAL STANDARD** ........................................................................ 8

**III. ARGUMENT** ........................................................................ 9

**A. The Amended Complaint Fails to Meet Rule 8's Pleading Requirements** ....... 9

Under Federal Rule of Civil Procedure 8, "bare assertions . . . amount[ing] to nothing more than a 'formulaic recitation of the elements' of a [cause of action]" cannot withstand Rule 12(b)(6) motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Here, the Complaint merely recites the language in the Policy and alleges that Plaintiffs were forced to suspend operations as a result of pandemic-related governmental closure orders. It does include any factual details establishing coverage or otherwise describe the alleged damage or loss for which Plaintiffs seek coverage. Thus, the Complaint does not "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

**B. The Amended Complaint Otherwise Fails To State A Claim Under The Plain Terms Of The Policy And Must Be Dismissed Pursuant to Rule 12(B)(6)** ..... 11

Even if the Complaint included facts establishing a plausible claim for relief, it does not state a claim under the Policy, which must be interpreted, like other contracts, based on its clear terms. *See Hybud Equip. Corp. v. Sphere Drake Ins. Co., Ltd.*, 64 Ohio St.3d 657, 597 N.E.2d 1096, 1102 (1992); *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, ¶11.

**1. Plaintiffs' Breach of Contract Claim (Count III) Fails to Assert Facts Establishing A "Direct Physical Loss"** .................................................. 12

**a) The Building Coverage and Business Income Coverage Do Not Apply Because Plaintiffs Have Not Alleged a "Direct Physical Loss."** ........................................................................ 12

Plaintiffs seek coverage under the Building Coverage and Business Income Coverage in the Policy. Both those coverages require that Plaintiffs establish "direct physical loss or damage" to insured property. In Ohio, a "physical" loss is "a harm to … property that adversely affects the structural integrity of the [property]." *Mastellone v.*

*Lightning Rod Mut. Ins. Co.*, 175 Ohio App.3d 23, 2008-Ohio-311, ¶61 (8th Dist. 2008). A threat of damage does not constitute physical loss or damage. *See, e.g., Newman Myers Kreines Gross Harris, P.C. v. Great Northern Ins. Co.*, 17 F. Supp. 3d 323, 331 (S.D.N.Y. 2014).

Here, Plaintiffs do not allege any change to the structural integrity of the insured premises. They do not even allege that Coronavirus was present at any insured property. Thus, they are not entitled to coverage under the Building Coverage and Business Income Coverage.

**b) The Civil Authority Coverage Does Not Apply Because Plaintiffs Have Not Alleged Any Facts To Support Application Of That Coverage..........................................................15**

Plaintiffs also seek coverage under the Civil Authority Coverage in the Policy. But that coverage is not triggered unless: 1) there is a direct, physical damage to property *other than* the insured premises; 2) that damaged property is located *within one mile* of the insured premises; 3) that property damage *caused* a civil authority to prohibit access to the insured premises.

Here, Plaintiffs have not alleged any physical damage to property other than Plaintiffs'. Nor have they alleged that any such damage is located within one mile of the insured premises. Nor have they alleged that any such damage caused a civil authority to prohibit access to any insured premises. The Ohio Closure Order Plaintiffs cite does not contain facts that would establish any of these elements, and certainly does not indicate that it was issued in response to damage within one mile of Plaintiffs' insured premises. *See United Air Lines, Inc. v. Ins. Co. of State of Pa.*, 439 F. 3d 128, 134-135 (2nd Cir. 2006) (civil authority coverage not available where government closure order was not based upon "damage to adjacent premises"); *Dickie Brennan & Co., Inc.*, 636 F.3d at 686-687 (civil authority coverage not available where order was issued in response to damage not located near insured); *Syufy Enters. v. Home Ins. Co. of Ind.*, No. 94-cv-00756, 1995 WL 129229, at *2 (N.D. Cal. Mar. 21, 1995).

**2. The Virus Exclusion Precludes Coverage As To Five Plaintiffs..........18**

The Policies issued to Dublin, New Albany, Tuttle Crossing, Powell, and Gahanna contain a clear and unequivocal Virus

Exclusion excluding any "loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." To the extent Plaintiffs allege any facts about their loss, they allege that the loss was caused by a "virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." Thus, their claim is barred. *See Lambi v. Am. Family Mut. Ins. Co.*, 498 Fed. Appx. 655, 656 (8th Cir. 2013) (finding similar virus exclusion clearly and unambiguously excluded liability coverage).

**3. Plaintiffs' Bad Faith Claim (Count II) Fails As A Matter of Law ......19**

Plaintiffs' bad faith claim fails because their underlying coverage claim fails. *See Gehrisch v. Chubb Group of Ins. Cos*., 645 Fed. App'x. 488, 494 (6th Cir.2016) (if the insured's breach of contract claim fails, so does his bad faith claim); *Wright State Physicians, Inc. v. Doctors Co*., 2016-Ohio-8367, 78 N.E.3d 284, ¶28 (2nd Dist. Dec. 23, 2016) (no bad faith without coverage).

Independently, Plaintiffs' bad faith claim fails because PIIC had "reasonable justification" for denying Plaintiffs' claims. Because jurisprudence regarding Coronavirus is still developing, there is certainly binding authority holding that the language in the Policies covers business interruption losses related to COVID-19. PIIC's coverage decision is therefore reasonably justified given the language in the Policies and the undeveloped state of the law at the time Plaintiffs submitted their claims. *See Addington v. Allstate Ins. Co*., 142 Ohio App. 3d 677, 681, 756 N.E.2d 750, 753 (2001). And, in any event, Plaintiffs' bad faith claim does not contain sufficient facts to state a "plausible" claim for relief. It is merely a conclusory legal allegation. *Broadbent v. Americans for Affordable Healthcare, Inc*., No. 1:10-cv-943, 2011 WL 7115984, at *3-5 (S.D. Ohio Dec. 16, 2011).

**C. Plaintiffs Are Not Entitled To A Declaratory Judgment As A Matter of Law..........................................................................................................22**

**1. Plaintiffs Have Not Alleged Any Likelihood Of Future Loss And Cannot Maintain A Declaratory Judgment to Determine Liability For A Prior Loss.........................................................................................22**

"The 'useful purpose' served by the declaratory judgment action is the clarification of legal duties for the future," not past acts or conduct. AmSouth Bank v. Dale, 386 F.3d 763, 786 (6th Cir. 2004). Here, however, Plaintiffs allege that they suffered a loss arising from

an order issued by the Governor of Ohio on March 24, 2020. Plaintiffs are not entitled to a declaratory judgment that PIIC is liable for that prior loss. *Guild Assocs., Inc. v. Bio-Energy (Washington) LLC*, No. 2:13-CV-1041, 2015 WL 13034879, at *7 (S.D. Ohio Feb. 12, 2015).

**2. Plaintiffs' Declaratory Judgment Claim Would Not Resolve The Dispute Between The Parties And Thus Seeks An Advisory Opinion.....23**

Independently, a declaratory judgment would not resolve the entire dispute because a second action would be necessary to determine the losses that are covered under the Policy and the amounts, if any, that are due and owing. Plaintiffs cannot use a declaratory judgment action to adjudicate a portion of their dispute or obtain an advanced ruling on liability or affirmative defenses. *Calderon v. Ashmus*, 523 U.S. 740, 748 (1998) (federal law "prevent[s] federal-court litigants from seeking by declaratory judgment to litigate a single issue in a dispute that must await another lawsuit for complete resolution."); *see also Miami Valley Mobile Health Servs., Inc. v. ExamOne Worldwide, Inc.*, 852 F. Supp. 2d 925, 938 (S.D. Ohio 2012).

**IV. CONCLUSION .....24**

**CERTIFICATE OF SERVICE .....24**

**MEMORANDUM IN SUPPORT**

Plaintiffs seek coverage under Commercial Lines insurance policies issued by PIIC (collectively, the "Policies"[1], attached as Exhibit 1)[2], providing property insurance coverage for Plaintiffs' various business premises (the "Covered Property"). (Am. Compl., ECF No. 8, ¶ 6.) Specifically, the Complaint alleges that PIIC improperly denied coverage for lost business income and interruption by civil authority caused by the COVID-19 pandemic and related orders by government officials requiring the closure of non-essential businesses as a precaution to prevent further spread of the disease. (Am. Compl. ¶¶ 10, 13, 15-18, 20-22). Count I seeks a declaration the Plaintiffs' losses are covered under the Policy, as well as a declaration that PIIC must pay the full amount of allegedly covered losses Plaintiffs have purportedly sustained. Count II seeks bad faith damages and attorney's fees for PIIC's alleged bad faith refusal to pay Plaintiffs' claims. Count III seeks breach of contract damages. Plaintiffs' claims fail for multiple reasons.

At the outset, the Amended Complaint does not meet the *Twombly/Iqbal* pleading standard because it does not allege facts sufficient to state a plausible claim for relief under Rule 8, Fed. R. Civ. P. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677-81 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-63 (2007). Plaintiffs' Policies require, among other things, "direct *physical* loss of or damage to" plaintiffs' business premises, (the "Covered Property") as a prerequisite to Business

[1] Exhibit 1 consists of each Plaintiff's policy issued by PIIC and appear in the order that Plaintiffs are listed in the caption of the Amended Complaint.

[2] This Court may consider the Policies even though they are not attached to the Complaint. *See Stein v. HHGREGG, Inc.*, 873 F.3d 523, 528 (6th Cir. 2017) ("[A] court may consider exhibits attached to the complaint, public records, items appearing in the record of the case, and exhibits attached to defendant's motion to dismiss, so long as they are referred to in the complaint and are central to the claims contained therein, without converting the motion to one for summary judgment."); *Stevens Transp. TL, Inc. v. Great Am. Ins. Co.*, No. 1:11-CV-00236, 2012 WL 1564207, at *3 (S.D. Ohio May 2, 2012) (Court allowed to consider insurance contract between parties even though it was not attached to the complaint because it was incorporated in the complaint by reference and was an integral part of the complaint).

Income coverage. Similarly, a prerequisite to Civil Authority coverage is the issuance of civil authority orders barring access to Plaintiffs' premises in response to "direct physical loss or damage" to properties within a mile of Plaintiffs' premises. Although Plaintiffs' Amended Complaint sets forth much about the COVID-19 pandemic and resulting emergency orders, Plaintiffs' complaint is devoid of any facts establishing any actual physical loss or damage or loss to any of the business premises anywhere, and contains no allegations that any insured property required repair or replacement of any kind. All that appears are conclusory non-sequiturs asserting that issuance of gubernatorial orders closing businesses generally, or the supposedly "ubiquitous nature" of COVID-19, in some unexplained way constitutes "direct physical loss or damage." (Am. Compl., ¶¶ 13, 18, 22, 24, 26, 43-44.) Those bald recitals are unsupported by any facts and are not sufficient to "nudge [Plaintiffs'] claims across the line from conceivable to plausible." Thus, the Amended Complaint must be dismissed. *Twombly,* 540 U.S. at 555; Fed. R. Civ. P. 8.

The Complaint also fails to state a claim under Rule 12(b)(6) for other reasons. First, five of the Plaintiffs' claims[3] are barred because their insurance policies include a clear, unambiguous, and specific exclusion for any "loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease" (the "Virus Exclusion"). (*See* Exhibit 8). Plaintiffs unquestionably claim "damage caused by or resulting from" a "virus" that induces "physical distress, illness or disease," and thus falls squarely within the Virus Exclusion *Id.*

[3] The five PIIC policies that contain the Virus Exclusion were issued to Dublin Ashanik, LLC d/b/a The Goddard School of Dublin ("Dublin"); Campbell Family Childcare, Inc. d/b/a The Goddard School of New Albany ("New Albany"); Park School of Dublin, LLC d/b/a The Goddard School of Dublin (Tuttle Crossing) ("Tuttle Crossing"); Burkhold Enterprises, LLC d/b/a The Goddard School of Powell ("Powell"); and Park School of Gahanna, LLC d/b/a The Goddard School of Gahanna ("Gahanna").

Next, Plaintiffs' claims fail because the losses they allege are not covered by the Policy even in the absence of the Virus Exclusion. The Business Income Coverage requires that the insured establish "direct physical loss or damage" to the insured premises. To establish direct physical loss or damage under applicable law, Plaintiffs must show that the property suffered demonstrable, physical alteration. The Amended Complaint, however, fails to set forth any facts demonstrating that any Plaintiffs' business premises suffered any physical alteration, impairment or damage. Although the Complaint repeatedly parrots the phrase "direct physical loss," it does not specify the nature of any physical loss or damage, nor does it explain how the spread of an infectious disease throughout the United States would result in tangible physical loss or damage to Plaintiffs' business premises. Similarly, Civil Authority Coverage requires that access to Plaintiffs' premises be prohibited by civil authorities in response to dangerous physical conditions as a result of "direct physical loss of or damage to" other properties within a mile of the insured premises. The Amended Complaint contains no allegations establishing "direct physical loss of or damage to" any nearby structures. Moreover, the governmental orders closing businesses to the public generally were in response to the pandemic and to control further spread of the disease, not in response to any physical damage to property. So, all Plaintiffs' claims fail as a matter of law.

Finally, Plaintiffs have established no basis on which to obtain declaratory relief. The Complaint seeks a declaration of legal rights based on abstract assertions that Plaintiffs suffered unspecified physical loss or damage at some time *in the past*. But "[t]he 'useful purpose' served by the declaratory judgment action is the clarification of legal duties for the future," not past acts or conduct. *AmSouth Bank v. Dale*, 386 F.3d 763, 786 (6th Cir. 2004). For that reason alone, Plaintiffs' claim for declaratory judgment is barred. Declaratory relief also is inappropriate because the declaration of "coverage" and liability Plaintiffs seek would not resolve the dispute

between the parties. Any such declaration would still require further proceedings to determine the precise losses that are covered under the Policy and the amounts, if any, that are due and owing. *See Calderon v. Ashmus*, 523 U.S. 740, 748, 118 S. Ct. 1694, 1699, 140 L. Ed. 2d 970 (1998) (plaintiff cannot "seek[ ] by declaratory judgment to litigate a single issue in a dispute that must await another lawsuit for complete resolution."). Accordingly, and the other insufficiencies in the Amended Complaint notwithstanding, Count I for declaratory relief should be denied under 28 U.S.C. § 2201.

In sum, the allegations of the Amended Complaint simply do not establish a plausible basis for relief in the face of the clear and unambiguous provisions of the Policies. Accordingly, the Amended Complaint fails to state a claim and should be dismissed in its entirety as to all Plaintiffs.

## I. FACTUAL BACKGROUND

Plaintiffs own and operate private preschools in Ohio. (Am. Compl. ¶ 1). Plaintiffs Dakota Girls, LLC d/b/a The Goddard School of Grove City ("Dakota Girls") and Elliott Care, LLC d/b/a The Goddard School of Worthington ("Elliott Care") originally commenced this action on April 22, 2020. (*See* ECF No. 1). On May 26, 2020, Plaintiffs filed a First Amended Complaint ("Amended Complaint"). (*See* ECF No. 8). The Amended Complaint is the same as the Complaint except that it names 13 additional preschools as Plaintiffs. [4] Plaintiffs seek coverage under their

[4] The 13 additional Plaintiffs are Dublin Ashanik, LLC d/b/a The Goddard School of Dublin; Educare of Greene, Inc. d/b/a The Goddard School of Uniontown; Campbell Family Childcare, Inc. d/b/a The Goddard School of New Albany; Lillypad Learning Center, LLC d/b/a The Goddard School of Lewis Center; Fuqua Norman, Inc. d/b/a The Goddard School of Centerville; Eagle School of Hilliard Ohio, Inc. d/b/a The Goddard School of Hilliard; Powell Enterprises, Inc. d/b/a the Goddard School of Westerville I; Park Enterprises of Ohio, LLC d/b/a The Goddard School of Canal Winchester; Park School of Dublin, LLC d/b/a The Goddard School of Dublin (Tuttle Crossing); Fixari School of Pickerington, LLC d/b/a The Goddard School of Pickerington; Fixari School of Reynoldsburg, LLC d/b/a The Goddard School of Reynoldsburg; Burkhold Enterprises, LLC d/b/a The Goddard School of Powell; and Park School of Gahanna, LLC d/b/a The Goddard School of Gahanna.

Commercial Lines Policies providing property coverage for Plaintiffs' businesses. (Am. Compl. ¶ 6; *see, generally*, Ex. 1).

The Policies all contain the following forms pertinent to the Amended Complaint[5]:

- Building and Personal Property Coverage Form No. CP 00 10 10 12, attached as Exhibit 3;
- Business Income (and Extra Expenses) Coverage Form No. CP 00 30 10 12, attached as Exhibit 4;
- Causes of Loss—Special Form No. CP 10 30 09 17, attached as Exhibit 5;
- Elite Property Enhancement: Day Care Centers Endorsement No. PI-EPE-DY (01/07), attached as Exhibit 6; and
- Communicable Disease and Water-Borne Pathogen – Business Income and Extra Expense Coverage Endorsement No. PI-CD-001 (02/08), attached as Exhibit 7.

All the Policies generally insure for certain "Covered Causes of Loss." *See* Exhibit 1; *see also* Exhibit 5, p. 1. Those "Covered Causes of Loss mean[ ] direct physical loss unless the loss is excluded or limited in this policy." Exhibit 5, p. 1.

Where a loss arises from a "Covered Cause of Loss," the Policies provide certain specific coverages enumerated therein. One of these coverages covers loss to Plaintiffs' buildings and personal property ("Building Coverage"). Like the "Covered Causes of Loss" more generally, however, the Building Coverage extends *only* to "direct or physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss." (Ex. 3, p. 1).

Similarly, the Policies provide coverage for lost business income ("Business Income Coverage"). That coverage is triggered *only if* Plaintiffs' operations are suspended as a result of "direct physical loss of or damage to" the insured premises. Specifically, PIIC:

[5] Exhibit 2 identifies the location of each of these forms within each Plaintiff's Policy. For ease of reference, this Motion cites to the applicable forms, which are attached as Exhibits 3 through 7.

> will pay for the actual loss of Business Income you sustain due to the necessary 'suspension' of your 'operations' during the 'period of restoration'.[6] **The 'suspension' must be caused by direct physical loss of or damage to property at premises which are described in the Declarations** and for which a Business Income Limit of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a **Covered Cause of Loss**.

(Ex. 4, p. 1 (emphasis added)).

Finally, the Policies provide coverage for certain losses caused by the action of a civil authority ("Civil Authority Coverage") (*see* Am. Compl. ¶¶ 20-21). That coverage provides:

> ***When a Covered Cause of Loss causes damage to property other than property at the described premises***, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:
>
> (1) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and
>
> (2) The action of civil authority is taken in response to ***dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage***, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

(Ex. 4, p. 2 (emphasis added)).

Thus, both the Building Coverage and the Business Expense Coverage require Plaintiffs to establish "direct physical loss of or damage to" the insured premises. Similarly, the Civil Authority Coverage requires Plaintiffs to establish that a civil authority barred access to Plaintiffs' premises in response to direct physical loss or damage to other property located "not more than one mile

[6] "Period of Restoration" is defined in the Policy as the period of time that begins 72 hours after the time or the direct physical loss or damage for Business Income Coverage, or immediately after the time of direct physical loss or damage for Extra Expense Coverage, and that ends when the property reasonably should have been repaired or restored, or when permanent operations commence at a different location, whichever comes first. (Ex. 4, p. 9).

from" the insured business. (Ex. 4, p. 2). So, in all cases, direct *physical* loss of or damage to property is a prerequisite to coverage.[7]

Five of the Policies are also subject to a Virus Exclusion that excludes coverage for any "loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." (Ex. 8, p. 1).[8] These five Policies also includes a conspicuous notice highlighting the significance of the Virus Exclusion and encouraging Plaintiffs to read all the Policy endorsements carefully. (a copy of the notice is attached as Exhibit 9).

Against that backdrop, Plaintiffs allege that COVID-19 has spread rapidly throughout the country and has been declared a pandemic by the World Health Organization. (Am. Compl. ¶ 31.) Although Plaintiffs do not allege any actual contamination or illness at its business premises, and likewise do not allege direct physical damage of any kind, Plaintiffs assert that they are entitled to coverage because the Governor of Ohio, Ohio Director of Health and other public officials ordered closure of all non-essential or non-life-sustaining businesses in an effort to limit the spread of the disease, in part to "avoid an imminent threat with a high probability of widespread exposure to COVID-19 with a significant risk of substantial harm to a large number of people in the general population." (Am. Compl. ¶ 38). Plaintiffs claim that in response to the Ohio Governor and officials' orders, Plaintiffs closed their businesses on March 25, 2020 and gave notice of their claims to PIIC "[i]n or around March 2020." (Am. Compl. ¶ 46). PIIC denied Plaintiffs' claims

---

[7] The sole exception is for coverage under the Communicable Disease and Water-Borne Pathogen Endorsement. *See* Exhibit 7. Plaintiffs, however, do not seek coverage under that endorsement in the Amended Complaint. Nor could they, as coverage under the endorsement is not triggered unless "a 'communicable disease' . . . causes an ***actual illness*** at the insured premises." *Id.* (emphasis added). Here, Plaintiffs do not allege any actual illness at the insured premises.

[8] *See supra* fn. 3.

and indicated it would not be providing coverage to Plaintiffs because there has been no direct physical loss or damage to Plaintiffs' properties.[9] (Am. Compl. ¶ 47).

Following PIIC's denial of Plaintiffs' claims, Plaintiffs filed this action seeking a declaratory judgment (Count I) that: (a) they are entitled to coverage under the Policy; (b) losses Plaintiffs have incurred in connection with the necessary interruption of their businesses due to the presence of COVID-19 and/or one or more government closure orders are insured losses under the Policies; and/or (c) PIIC is obligated to pay Plaintiffs for the full amount of the losses they have incurred in connection with the covered losses related to the necessary interruption of their businesses due to the presence of COVID-19 and/or one or more government closure orders. (Am. Compl. ¶¶ 53, Prayer for Relief, p. 14). Plaintiffs also seeks damages for bad faith (Count II) and breach of contract (Count III) as a result of PIIC's failure and refusal to provide coverage. (Compl. ¶¶ 48, 50, 54-71).

## II. LEGAL STANDARD

Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Failure to plead sufficient facts to state a claim to relief that is "plausible on its face" warrants dismissal. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). It is a Plaintiffs' burden to show its "entitlement to relief"

[9] Bereft of facts as the Amended Complaint may be, the actual coverage and damage issues presented are highly individualized and will depend on the unique facts and circumstances of each claim, the different civil authority orders applicable to each Plaintiff, the specific damage, if any, to each Plaintiff's respective business premises and the respective "Period of Restoration" attributable to each. Similarly, Plaintiffs' bad faith claims will depend on the manner in which each individual claim was presented, investigated and processed. Although the impact of the Covid-19 pandemic is in a very broad sense a common thread among the various Plaintiffs, their respective claims are quite independent and do not arise out of "the same transaction, occurrence, or series of transactions or occurrences." Rule 20, Fed.R.Civ.P. To the extent any of Plaintiffs' claims survive dismissal, PIIC reserves the right to assert improper joinder and to seek severance of Plaintiffs' claims for purposes of discovery and/or trial.

with more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.

Although a Rule 12(b)(6) motion to dismiss accepts the complaint's well-pleaded factual allegations as true for purposes of the motion, the Court is not required to accept mere conclusions or "bare assertions … amounting to nothing more than a 'formulaic recitation' of the elements" of a claim. *Iqbal*, 556 U.S. at 678, 129 S.Ct. at 1949, citing *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955. "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678. The Court need not, however, "accept conclusory allegations or conclusions of law dressed up as facts." *Erie County, Ohio v. Morton Salt, Inc.*, 702 F.3d 860, 867 (6th Cir.2012) (citing *Iqbal*, 556 U.S. at 678)).

Applying those standards here, and as more fully set forth below, Plaintiffs' Amended Complaint must be dismissed for failure to state a claim.

## III. ARGUMENT

### A. The Amended Complaint Fails To Meet Rule 8's Pleading Requirements.

Although Plaintiffs seek coverage under policies of property insurance that require a "direct physical loss of or damage to" insured premises, Plaintiffs plead no facts describing any physical change, alteration, or damage to the Covered Property. Instead, the Amended Complaint just repeatedly recites the naked phrase "direct physical loss" without explaining what actual physical loss occurred is or how either the pandemic or government orders could have (much less did) physically alter or damage the Covered Property. (Am. Compl. ¶ 26) (asserting, again as a conclusion, that "Losses caused by a pandemic, including losses caused by the novel coronavirus known as COVID-19 and/or losses caused by a Closure Order, are a Covered Cause of Loss…."); *id.* at ¶¶ 43, 44 (the COVID-19 virus and Closure Orders have caused "direct physical loss of or damage Plaintiffs' Covered Properties and business operations"); *id.* at ¶¶ 13, 18, 22 (asserting

legal conclusion that Plaintiffs are "entitled to coverage" under the Building Coverage, Business Income Coverage and Civil Authority Coverage). The Amended Complaint does not identify which properties suffered physical loss or damage, what the damage or loss was on any property, or how there was any *physical* impact on any property.

The Complaint's threadbare conclusions are insufficient to state a claim and fall far short of *Twombly's* requirement that the complaint contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. *See also Iqbal*, 556 U.S. at 678, citing *Twombly*, 550 U.S. at 555 ("bare assertions, much like the pleading of conspiracy in *Twombly*, amount[ing] to nothing more than a 'formulaic recitation of the elements' of a constitutional discrimination claim" cannot withstand Rule 12(b)(6) motion to dismiss). No facts are alleged establishing any "direct physical loss of or damage to" Plaintiffs' respective properties, nor do Plaintiffs claim that any insured property required repair or replacement of any kind.

The *only* actual facts[10] set forth in the Amended Complaint allege that Plaintiffs were forced to suspend operations as a result of pandemic-related governmental closure orders. (Am. Compl. ¶¶ 40-41). That, however, is not "direct physical loss or damage" to property. Accordingly, the Amended Complaint sets forth no facts establishing "direct physical loss or damage" to the Covered Property necessary to trigger Building, Business Income or Civil Authority Coverages. And Plaintiffs plead no facts establishing the government orders were in response to any physical loss of or damage to other property, which is prerequisite to any Civil Authority Coverage. *See Source Food Tech*, 465 F.3d at 837–38 (8th Cir. 2006) (insured did not suffer "direct physical loss" where government prohibited access to its property, reasoning that

[10] A fact is "[s]omething that actually exists" or "[a]n actual or alleged event or circumstance, as distinguished from its legal effect, consequence, or interpretation." *Black's Law Dictionary* (10th ed. 2014).

although plaintiff lost access to property, the property was not damaged in any way). So, there are no facts pled that would establish a plausible claim for relief under the Policies as required under Rule 8. *Twombly* and *Iqbal* therefore control and the Amended Complaint must be dismissed.

**B. The Amended Complaint Otherwise Fails To State A Claim Under The Plain Terms Of The Policy And Must Be Dismissed Pursuant To Rule 12(B)(6).**

Quite apart from the Complaint's Rule 8 deficiencies, the Amended Complaint otherwise fails to state a claim on which relief can be granted, and must be dismissed under Rule 12(b)(6). Under Ohio law, insurance policies are construed in accordance with the same rules as other written contracts. *Hybud Equip. Corp. v. Sphere Drake Ins. Co., Ltd.*, 64 Ohio St.3d 657, 597 N.E.2d 1096, 1102 (1992). Thus, the interpretation of an insurance policy is a question of law for the Court. *Sharonville v. American Employers Ins. Co.*, 109 Ohio St.3d 186, 2006-Ohio-2180, ¶6. "When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties." *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, ¶11. The Court must "presume that 'words are used for a specific purpose and ... avoid interpretations that render portions meaningless or unnecessary.'" *Gehrisch v. Chubb Group of Ins. Cos.*, 645 Fed.Appx. 488, 491 (6th Cir.2016) (quoting *Wohl v. Swinney*, 118 Ohio St.3d 277, 2008-Ohio-2334, ¶22).

The party seeking to recover on an insurance policy has the burden of demonstrating coverage under the policy. *Clifford v. Church Mut. Ins. Co.*, 655 Fed. Appx. 293, 297 (6th Cir.2016) (citing *Chicago Title Ins. Co. v. Huntington Natl. Bank*, 87 Ohio St.3d 270, 719 N.E.2d 955, 959 (1999)). Plaintiffs bear the burden of proving they sustained a covered loss under the PIIC policies – a burden they cannot sustain.

**1. Plaintiffs' Breach Of Contract Claim (Count III) Fails To Assert *Facts* Establishing A "Direct Physical Loss."**

**a) The Building Coverage and Business Income Coverage Do Not Apply Because Plaintiffs Have Not Alleged A "Direct Physical Loss."**

The Amended Complaint fails to state a claim under the Building Coverage or Business Income Coverage because it does not allege facts showing "direct physical loss or damage" to Plaintiffs' properties.

"Direct physical loss or damage" is prerequisite to the Building and Business Income Coverages under which all Plaintiffs seek to recover. Specifically, the Building Coverage requires "direct or physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss." (Ex. 3, p. 1).

Similarly, the Business Income Coverage provides that PIIC "will pay for the actual loss of Business Income you sustain due to the necessary 'suspension' of your 'operations' during the 'period of restoration'. ***The 'suspension' must be caused by direct physical loss of or damage to property*** at premises which are described in the Declarations and for which a Business Income Limit of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss." (Ex. 4, p. 1 (emphasis added)). Thus, to establish coverage under the Building or Business Income Coverage, Plaintiffs must plead *facts* showing it suffered a "direct physical loss."

Under Ohio law, a "physical" loss is "a harm to … property that adversely affects the structural integrity of the [property]." *Mastellone v. Lightning Rod Mut. Ins. Co.*, 175 Ohio App.3d 23, 2008-Ohio-311, ¶61 (8th Dist. 2008).[11] Citing *Couch on Insurance*, the court of appeals in

[11] *Mastellone*, as it was authored by now Ohio Supreme Court Justice Judge Melody J. Stewart, is particularly instructive. As the Sixth Circuit explained in *Penton Media, Inc. v. Affiliated FM Ins. Co.*, 245 Fed. App'x. 495, 499 (6th Cir. 2007): "In analyzing a state-law contract claim brought in federal court based on diversity jurisdiction, 'this Court applies state law in accordance with the

*Mastellone* recognized: "The requirement that the loss be 'physical,' given the ordinary definition of that term, is widely held to exclude alleged losses that are intangible or incorporeal, and, thereby, to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property[.]" 10A *Couch on Insurance* §148:46 (3d ed. 1998).

Here, Plaintiffs do not allege that the structural integrity of any property at their premises has been adversely affected. They do not make any allegations describing physical loss or damage at ***any*** of the ***fifteen*** insured premises at issue (much less a loss that affected the structural integrity of those premises) or otherwise distinguish or describe the loss allegedly suffered by any one of the fifteen Plaintiffs, or claim that any property required repair or replacement. Instead, Plaintiffs merely allege that a "[p]hysical loss of, or damage to" property "***may*** be may be reasonably interpreted to occur when a covered cause of loss ***threatens*** or renders property ***unusable*** or ***unsuitable*** for its intended purpose or ***unsafe*** for normal human occupancy and/or continued use." (Am. Compl. ¶12 (emphasis added)).

A ***threat*** of damage, however, does not constitute physical loss or damage. *See, e.g.*, *Newman Myers Kreines Gross Harris, P.C. v. Great Northern Ins. Co.*, 17 F. Supp. 3d 323, 331 (S.D.N.Y.2014) (phrase "direct physical loss or damage" did not include closure of insured law firm after utility company preemptively shut off power to lower Manhattan in advance of Superstorm Sandy); *Roundabout Theatre Co., Inc. v. Continental Casualty Co.*, 751 N.Y.S.2d 4, 302 A.D.2d 1, 7 (N.Y. App. Div. 2002) (phrase "direct physical loss or damage to [insured's]

---

controlling decision of the Ohio Supreme Court. If the state supreme court has not yet addressed the issue presented, this Court must predict how it would rule, by looking to 'all available data,' including state appellate decisions.'"

property" did not include loss of use when insured's theatre became inaccessible because city closed nearby street after nearby structure collapsed).

Moreover, Plaintiffs' premises were not ***in fact*** rendered unusable, unsuitable or unsafe. Noticeably absent from the Amended Complaint is any allegation that the Coronavirus was ***present*** inside Plaintiffs' premises.[12] But even ***if*** the Amended Complaint alleged as much, the presence of the Coronavirus would not have rendered Plaintiffs' premises unusable, unsuitable or unsafe – much less have caused "physical loss or, or damage to" property. At most, the presence of the Coronavirus inside Plaintiffs' premises would have required cleaning or sanitizing – a purely economic loss that the courts have recognized is ***not*** "physical loss of or damage to property."[13] *See Mastellone*, 2008-Ohio-311, ¶¶64-68 (mold on exterior siding of house was not "physical damage" because it could be removed by ***cleaning*** with bleach); *Mama Jo's, Inc. v. Sparta Ins. Co.*, No. 17-cv-23362, 2018 WL 3412974, at *9 (S.D. Fla. June 11, 2018) ("***cleaning*** is not considered direct physical loss"). In concluding that cleaning and remediation expenses related to mold and bacterial contamination were "not tangible, physical losses, but economic losses," the Sixth Circuit, relying upon *Mastellone* and similar authorities across the nation, explained in

[12] Plaintiffs do allege that "COVID-19 and/or one or more Closure Orders have caused direct physical loss of or damage to Plaintiffs' Covered Properties and business operations, requiring suspension of operations at the Covered Properties" (*see* ECF No. 8 (Amended Complaint) at ¶44 (PageID No. 632)), but such allegation is the quintessential "conclusory allegation" of which *Twombly* and *Iqbal* warned. The allegation need ***not*** be accepted by the Court.

[13] In an effort to claim that their properties have been "damaged", Plaintiffs wrongly claim that the Centers for Disease Control and Prevention (CDC) "has found that the COVID-19 virus can last on surfaces such as those in Plaintiffs' private preschools for up to seventeen (17) days, thereby 'damaging'—those surfaces". (Am. Compl. ¶42). No source is given for this allegation. However, to the extent the CDC made such a finding, it no longer stands by it. *See* https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/how-covid-spreads.html (last visited on June 15, 2020). Indeed, the CDC has expressly stated that prolonged business shutdowns should ***not*** be a necessary result of Coronavirus at a given premises. Rather, simple cleaning and disinfecting is recommended. *See* https://www.cdc.gov/coronavirus/2019-ncov/faq.html#Cleaning-and-Disinfection (last visited on June 15, 2020).

*Universal Image Prods., Inc. v. Federal Ins. Co.*, 475 Fed. App'x. 569, 573-74 (6th Cir. 2012), that the losses to the property of the contamination could be cleaned and that the building itself was not physically damaged.[14]

For all these reasons, the Amended Complaint is devoid of any well pleaded facts establishing any physical loss or damage to Plaintiffs' properties. Beyond Plaintiffs' "threadbare assertions" of "physical loss of or damage to" property, the Amended Complaint provides no description or details of the claimed "physical loss" or explain how the virus in any way caused a "demonstrable, physical alteration" at Plaintiffs' properties. *See Twombly*, 550 U.S. at 555, 127 S.Ct. at 1964-65 (dismissing claim where allegations merely tracked conspiracy requirement); *Iqbal*, 556 U.S. at 678, 129 S.Ct. at 1949, citing *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955 ("bare assertions … amount[ing] to nothing more than a 'formulaic recitation of the elements'" of a claim do not withstand Rule 12(b)(6) motion to dismiss). Accordingly, even taking the well pleaded facts of the Amended Complaint as true, it fails to state a claim for coverage under the Building Coverage or Business Income Coverage.

**b) The Civil Authority Coverage Does Not Apply Because Plaintiffs Have Not Alleged Any Facts To Support Application Of That Coverage.**

Mirroring similar requirements found in the Building and Business Income Coverages, the Civil Authority provision provides that:

---

[14] In support of this position, the Sixth Circuit relied on various cases that have interpreted this issue in other jurisdictions. *See, e.g.*, *Columbiaknit, Inc. v. Affiliated FM Ins. Co.*, No. Civ. 98-434-HU, 1999 WL 619100, at *7 (D. Or. Aug. 4, 1999) (holding that a policyholder could not recover under a policy requiring "physical loss" unless the claimed mold physically and demonstrably damaged property); *MRI Healthcare Ctr. of Glendale, Inc. v. State Farm Gen. Ins. Co.*, 187 Cal. App. 4th 766, 115 Cal.Rptr.3d 27, 37-38 (Cal. Ct. App. 2010) ("A direct physical loss contemplates an actual change in insured property then in a satisfactory state, occasioned by accident or other fortuitous event directly upon the property causing it to become unsatisfactory for future use or requiring that repairs be made to make it so.") … *Mastellone v. Lightning Rod Mut. Ins. Co.*, 175 Ohio App.3d 23, 884 N..2d 1130, 1144 (Ohio Ct. App. 2008) (holding that mold does not constitute "physical damage" because "[t]he presence of mold did not alter or otherwise affect the structural integrity of the [property].").

> When a Covered Cause of Loss causes *damage to property other than property at the described premises*, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:
>
> (1) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, *and the described premises are within that area but are not more than one mile from the damaged property*; and
> (2) The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

(Ex. 4, p. 2 (emphasis added)).

Accordingly, to establish coverage, and as Plaintiffs acknowledge in their Amended Complaint (Am. Compl. ¶ 21), Plaintiffs must show "distinct, demonstrable, physical alteration" to property other than their own, located within one mile of the insured premises. That damage must result in an order from a civil authority prohibiting access to the Plaintiffs' premises. *See Dickie Brennan & Co. v. Lexington Ins. Co.*, 636 F.3d 683, 685 (5th Cir. 2011) (interpreting an almost identical coverage provision and holding that "the action of civil authority prohibiting access to the described premises must be caused by direct physical loss of or damage to property other than at the described premises; and [] the loss or damage to property other than the described premises must be caused by or result from a covered cause of loss as set forth in the policy.").

Here, Plaintiffs have not alleged--even in conclusory fashion--any physical damage to property other than Plaintiffs'. (*See* Ex. 4, p. 2 (insured must show damage to property other than Plaintiffs' property). Nor have Plaintiffs alleged, even in conclusory fashion, that "access to the area immediately surrounding the damaged property [was] prohibited by civil authority as a result of the damage." *Id.* Finally, Plaintiffs have not alleged, even in conclusory fashion, that their

property was "within the area [to which access has been prohibited] but not more than one mile from the damaged property," or that "the action of civil authority [was] taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage . . ." *Id*. Plaintiffs must allege *facts* establishing all of these elements to be entitled to Civil Authority Coverage. *See Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964-65.

While the Amended Complaint does allege the issuance of governmental closure orders in California, Illinois, and New York City due the virus physical impact on property, such governmental orders have no bearing on whether Plaintiffs are entitled to Civil Authority Coverage under Policies. The only order relevant to Plaintiffs' claims is the pronouncement that precipitated the shutdown of Plaintiffs' facilities: the March 24, 2020, Order issued by the Ohio Director of Health, Amy Acton, MD, MPH ("Ohio Closure Order").[15] But the Ohio Closure Order was to prevent exposure of the Coronavirus to the "general population, including the elderly and people with weakened immune systems and chronic medical conditions[.]'" It was not issued in response to dangerous physical conditions resulting from property damage occurring within a mile of the insured premises, as required under the Policy. (Ex. 4, p. 2).

In the absence of a direct nexus between a civil authority "shut down" order and actual damage to the insured property (or nearby property), courts have repeatedly found no coverage for claims involving civil authority "shut down" orders–from post-9/11 airport closures to hurricane evacuations to civil unrest curfews. *See, e.g., United Air Lines, Inc. v. Ins. Co. of State of Pa.*, 439 F. 3d 128, 134-135 (2nd Cir.2006) (civil authority coverage not available for airport closure ordered after September 2011 terrorist attacks even though nearby Pentagon was damaged, since "the government's … decision to halt operations at the Airport … was based on fears of future

[15] Plaintiffs reference and quote from the Ohio Closure Order, but fail to attach it to their Amended Complaint. A copy of the Ohio Closure Order is attached as Exhibit 10.

attacks" and not upon "damage to adjacent premises"); *Dickie Brennan & Co., Inc.*, 636 F.3d at 686-687 (civil authority coverage not available to restaurateur when Mayor of New Orleans issued mandatory evacuation order in response to approaching hurricane; even though hurricane damaged other property in the Caribbean, evacuation order issued because of "possible future storm surge, high winds, and flooding" and not because of "physical damage to property, either distant property in the Caribbean or property in Louisiana"); *Syufy Enters. v. Home Ins. Co. of Ind.*, No. 94-cv-00756, 1995 WL 129229, at *2 (N.D. Cal. Mar. 21, 1995) (civil authority coverage not available to theatre owners where theatre access was limited due to dawn-to-dusk curfews in response to rioting following the Rodney King verdict; curfews were imposed to prevent potential looting and rioting and not because of damage to adjacent property).[16]

In sum, Civil Authority Coverage does not apply.

**2. The Virus Exclusion Precludes Coverage As To Five Plaintiffs.**

Independently, the Policies issued to Dublin, New Albany, Tuttle Crossing, Powell, and Gahanna contain a clear and unequivocal Virus Exclusion excluding any "loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." (Ex. 8, p. 1). These Policies also include a notice highlighting the significance of the Virus Exclusion and encouraging Plaintiffs to read all the Policy endorsements carefully. (Ex. 9). The Virus Exclusion unequivocally "applies to all coverage under all forms and endorsements that comprise this Coverage Part or Policy, including but not limited to forms or endorsements that cover property damage to buildings or personal property and forms or endorsements that cover business income, extra expenses or action of civil

[16] The court in *Syufy* offered an example of when civil authority coverage would apply: "A building next door to a Syufy theater is damaged by fire; for safety reasons, the civil authorities issue an order closing the Syufy theater during repairs to the adjacent building. Any business loss suffered by Syufy … would be covered under the business interruption provision." *Id.*, at *2 n.1.

authority." (*Id.* at p. 1). To the extent Plaintiffs have alleged any facts regarding their alleged loss, that loss clearly results from a "virus . . . that induces or is capable of inducing physical distress, illness or disease." *Id.* Thus, on its face, the Virus Exclusion independently bars the claims asserted by Dublin, New Albany, Tuttle Crossing, Powell, and Gahanna. *See Lambi v. Am. Family Mut. Ins. Co.*, 498 Fed. Appx. 655, 656 (8th Cir. 2013) (finding similar virus exclusion clearly and unambiguously excluded liability coverage); *Doe v. State Farm Fire & Cas. Co.*, No. 2015-0136, 2015 WL 11083311 (Sup. Ct. N.H. Sept. 21, 2015), *1-2 (holding the same based upon cases from across the nation).[17]

**3. Plaintiffs' Bad Faith Claim (Count II) Fails As A Matter Of Law.**

Because Plaintiffs have failed to allege facts showing that they are entitled to coverage under the Policies, their Bad Faith claim necessarily fails. Under Ohio law, "[a]n insurer fails to exercise good faith in the processing of a claim of its insured where its refusal to pay a claim is not predicted upon circumstances that furnish a reasonable justification therefor." *Zoppo v. Homestead Ins. Co.*, 71 Ohio St.3d 552, 644 N.E.2d 397, Syllabus ¶16 (1994). In order to recover on a claim for bad faith, an insured must be entitled to coverage in the first instance. *See Wright State Physicians, Inc. v. Doctors Co.*, 2016-Ohio-8367, 78 N.E.3d 284, ¶28 (2nd Dist. Dec. 23, 2016) (no bad faith without coverage); *Boughan v. Nationwide Property & Casualty Co.*, 3rd Dist. No. 1-04-57, 2005-Ohio-244, ¶19 ("The [insureds] also argue that [the insurer] breached a good faith duty to handle their claim. This argument is precluded by our holding that the damage was not covered under the homeowners' policy."); *Bob Schmitt Homes, Inc. v. Cincinnati Ins. Co.*, 8th

[17] While Ohio courts have apparently not yet addressed the Virus Exclusion, they have found other categorical damages exclusions to be clear, unambiguous and enforceable. *See e.g. The Landings of Walden Condo. Ass'n. v. Lumbermens Mut. Cas. Co.*, 11th Dist. No. 2004-P-0075, 2005-Ohio-4042, ¶¶34-76 (mold exclusion was valid and enforceable); *Allstate Ins. Co. v. Croom*, 8th Dist. No. 95508, 2011-Ohio-1697, ¶¶6-14 (lead exclusion was valid and enforceable); *Murray v. All American Ins. Co.*, 121 Ohio App.3d 29, 32-34, 698 N.E.2d 1027 (12th Dist. 1997) (water damage exclusion was valid and enforceable). The result should be the same here. _

Dist. No. 75263, 2000 WL 218379, at *4 (Feb. 24, 2000) ("[The insured] has failed to satisfy its burden of showing that it is entitled to coverage under the [policy]. Therefore, since the initial factual prerequisite to this claim is lacking, summary judgment in favor of [the insurer] on [the insured's] bad faith claim was appropriate."); *Pasco v. State Auto Mut. Ins. Co.*, 10th Dist. No. 99AP-439, 1999 WL 1221633, at *6 (Dec. 21, 1999) ("given that [the] insurer's denial of coverage was proper, plaintiff's bad faith claim could not be maintained") (citing *GRE Ins. Group v. Intl. EPDM Rubber Roofing Sys., Inc.*, 6th Dist. No. L-98-1387, 1999 WL 253044 (Apr. 30, 1999)).

Sixth Circuit authority is in accord. *See Gehrisch v. Chubb Group of Ins. Cos.*, 645 Fed. App'x. 488, 494 (6th Cir.2016) (if the insured's breach of contract claim fails, so does his bad faith claim); *Bondex Intl., Inc. v. Hartford Acc. & Indem. Co.*, 677 F.3d 669, 684 (6th Cir. 2011) ("the district court properly treated the bad faith claim as a contingent claim that fell with [the insured's] primary coverage claims"); *see also Skinner v. Guarantee Trust Life Ins. Co.*, 813 F. Supp. 2d 865, 870 (S.D. Ohio 2011) ("[A claim for bad faith] is dependent upon a showing that Plaintiff's claim was covered under the policy. … Thus, because Defendant is entitled to summary judgment on the merits of Plaintiffs' breach of contract claim, Defendant is also entitled to summary judgment on Plaintiff's bad faith claim.").

The foregoing authority is particularly true in first-party property coverage cases where the insurer either has a duty to pay or it does not (as opposed to third-party liability coverage cases involving the duty to defend). Since Plaintiffs are not entitled to coverage under the PIIC policies, Plaintiffs' bad faith claims fail as a matter of law.

Independently, Plaintiffs' bad faith claim fails because PIIC had "reasonable justification" for denying Plaintiffs' claims. *Zoppo*, 71 Ohio St.3d at 554. Jurisprudence regarding COVID-19 related insurance claims is still developing. There is certainly no binding authority holding that

the language in the Policies covers business interruption losses related to COVID-19. PIIC's coverage decision is therefore reasonably justified given the language in the Policies and the undeveloped state of the law at the time Plaintiffs submitted their claims. *See Addington v. Allstate Ins. Co.*, 142 Ohio App. 3d 677, 681, 756 N.E.2d 750, 753 (2001) (bad faith claim failed because insurer's denial was reasonably justified in light of state of the law at time insurer denied claim, notwithstanding subsequent case law holding that claim was covered); *Florists' Mut. Ins. Co. v. Ludy Greenhouse Mfg. Corp.*, 521 F. Supp. 2d 661, 691 (S.D. Ohio 2007) ("A claim against an insurer will ***only*** survive, however, if the record shows that there were ***no*** circumstances in the case which could be viewed as creating a reasonable justification for that carrier's actions.") (emphasis added, quotations and citations omitted). For that reason, even if coverage existed (which it does not), PIIC did not act in bad faith by denying Plaintiffs' claims.

In any event, Plaintiffs' bad faith claims are nothing but conclusory statements that do not state a claim. *See e.g. Broadbent v. Americans for Affordable Healthcare, Inc.*, No. 1:10-cv-943, 2011 WL 7115984, at *3-5 (S.D. Ohio Dec. 16, 2011) (dismissing RICO claims, breach of contract and bad faith in 60 page amended complaint for insufficient factual support); *Smith v. State Farm Mut. Auto. Ins. Co.*, 506 Fed. Appx. 133, 136-137 (3rd Cir. 2012) (dismissing bad faith claim despite general allegations, misrepresentation of facts and coverage, and failure to properly evaluate claim because of lack of factual allegations about substance of misrepresentations and failure to evaluate); *Littlefield v. Concord Gen. Mut. Ins. Co.*, No. 2:10-cv-07, 2010 WL 5300814, at *3 (D. Vt. Dec. 22, 2010) (finding bad faith allegations of delayed payment insufficient where insured failed to provide factual allegations regarding the lack of reasonable basis for the delay); *Atiyeh v. Nat'l Fire Ins. Co. of Hartford*, 742 F.Supp.2d 591, 599 (E.D. Pa. 2010) (conclusory allegations of bad faith were insufficient to state a claim upon which relief could be granted).

### C. Plaintiffs Are Not Entitled To A Declaratory Judgment As A Matter Of Law.

#### 1. Plaintiffs Have Not Alleged Any Likelihood Of Future Loss And Cannot Maintain A Declaratory Judgment To Determine Liability For A Prior Loss.

As discussed above, Plaintiffs conclusorily allege that they have suffered unidentified "direct physical loss" as a result of the COVID-19 virus and prior government shutdown orders. Even if these allegations were supported by sufficient facts (they are not) Plaintiffs would not be entitled to the declaratory judgment sought in Count I of the Complaint. "The 'useful purpose' served by the declaratory judgment action is the clarification of legal duties for the future," not past acts or conduct. *AmSouth Bank v. Dale*, 386 F.3d 763, 786 (6th Cir. 2004); *see also Guild Assocs., Inc. v. Bio-Energy (Washington) LLC*, No. 2:13-CV-1041, 2015 WL 13034879, at *7 (S.D. Ohio Feb. 12, 2015) ("a declaration would clarify liability regarding only past conduct, which is likewise not useful for declaratory judgment purposes").

Here, Plaintiffs allege that they suffered unspecified loss or losses as a result of the Ohio Closure Order. That order was issued on March 24, 2020. Plaintiffs do not allege, even in conclusory fashion, that they are likely to suffer any similar injury in the future. Instead, Plaintiffs simply seek a declaration proclaiming liability as a result of this prior order. *See Guild Assocs., Inc*, 2015 WL 13034879, at *7 (A declaration clarifying "liability regarding only past conduct, [is] not useful for declaratory judgment purposes"); *see also Andela v. Admin. Office of U.S. Courts,* 569 F. App'x 80, 83 (3d Cir. 2014) ("Declaratory judgments are not meant simply to proclaim that one party is liable to another."). To the extent Plaintiffs have suffered any injury, Plaintiffs' remedy lies in its claim for breach of contract set forth in Count III. Plaintiffs may not use the Declaratory Judgment Act to obtain a declaration on liability, which is but one element of their breach of contract claim. For this reason, Plaintiffs are not entitled to a declaratory judgment and Count I should be dismissed.

### 2. Plaintiffs' Declaratory Judgment Claim Would Not Resolve The Dispute Between The Parties And Thus Seeks An Advisory Opinion.

Independently, and unlike Plaintiffs' claim for breach of contract in Count III, Plaintiffs' declaratory judgment claim would not resolve the entire dispute between the parties. It thus seeks nothing more than an advisory opinion as to liability for past acts. The Declaratory Judgment Act "prevent[s] federal-court litigants from seeking by declaratory judgment to litigate a single issue in a dispute that must await another lawsuit for complete resolution." *Calderon v. Ashmus*, 523 U.S. 740, 748 (1998); *Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 246, 73 S. Ct. 236, 241, 97 L. Ed. 291 (1952) (One cannot bring a declaratory-judgment action just to resolve one isolated issue in a possible future controversy).

Here, Plaintiffs seek a declaration that: (a) Plaintiffs are entitled to coverage under the Policies; (b) losses Plaintiffs have already incurred in connection with the necessary interruption of their businesses are due to the presence of COVID-19 and/or the Closure Orders are insured losses under the Policies; and (c) PIIC is obligated to pay Plaintiffs for the full amount of the losses they have incurred in connection with the covered losses. (Compl. ¶¶ 53, Prayer for Relief, p. 14). But that declaration will not resolve the entire dispute between the parties. To the contrary, even if Plaintiffs obtained the declaration they seek, a second action would be necessary to determine the losses that are covered under the Policy and the amounts, if any, that are due and owing. Plaintiffs cannot use the Declaratory Judgment Act to split their claim into separate liability and damages actions, or to "to gain a litigation advantage by obtaining an advance ruling on an affirmative defense." *Calderon*, 523 U.S. at 748 (federal law "prevent[s] federal-court litigants from seeking by declaratory judgment to litigate a single issue in a dispute that must await another lawsuit for complete resolution."); *see also Miami Valley Mobile Health Servs., Inc. v. ExamOne Worldwide, Inc.*, 852 F. Supp. 2d 925, 938 (S.D. Ohio 2012) (dismissing declaratory judgment

claim seeking declaration of coverage under insurance policy as duplicative of breach of contract action for breach of same policy). For that independent reason, Count I of the Amended Complaint should be dismissed.

## IV. CONCLUSION

For all the reasons set forth above, the Amended Complaint should be dismissed in its entirety.

Respectfully submitted,

/s/ *Richard M. Garner*
Richard M. Garner (0061734)
Sunny Lane Horacek (0089178)
**Collins, Roche, Utley & Garner, LLC**
655 Metro Place South, Suite 200
Dublin, OH 43107
Telephone: (614) 901-9600
Facsimile: (614) 901-2733
Email: rgarner@cruglaw.com
shoracek@cruglaw.com

*Attorneys for Defendant*
*Philadelphia Indemnity Insurance Company*

## CERTIFICATE OF SERVICE

I hereby certify that on June 22, 2020, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Richard M. Garner*
**RICHARD M. GARNER** (0061734)

*Attorney for Defendant*
*Philadelphia Indemnity Insurance Company*