<div align="center">

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

</div>

|  |  |  |
|---|---|---|
| **DAKOTA GIRLS, LLC et al.** | : | Case No. 2:20-cv-02035 |
|  | : |  |
| **Plaintiffs** | : | JUDGE Sarah D. Morrison |
|  | : |  |
| **v.** | : | MAGISTRATE JUDGE Kimberly |
|  | : | A. Jolson |
| **PHILADELPHIA INDEMNITY** | : |  |
| **INSURANCE COMPANY** | : |  |
|  | : |  |
| **Defendant** | : |  |

---

<div align="center">

**DEFENDANT PHILADELPHIA INDEMNITY INSURANCE COMPANY'S**
**MOTION TO DISMISS SECOND AMENDED COMPLAINT**

</div>

---

Defendant Philadelphia Indemnity Insurance Company ("PIIC") respectfully moves the Court, pursuant to Federal Rule of Civil Procedure 12(b)(6), for dismissal of Plaintiffs' Second Amended Complaint on the ground that it fails to state a claim upon which relief may be granted.

A Memorandum in Support of PIIC's Motion follows.

<div align="center" style="float:right">

Respectfully submitted,

</div>

/s/ *Richard M. Garner*
Richard M. Garner (0061734)
Sunny Lane Horacek (0089178)
**Collins, Roche, Utley & Garner, LLC**
655 Metro Place South, Suite 200
Dublin, OH 43107
Telephone: (614) 901-9600
Facsimile: (614) 901-2733
Email: rgarner@cruglaw.com
        shoracek@cruglaw.com

*Counsel for Defendant*
*Philadelphia Indemnity Insurance*
*Company*

Richard L. Fenton
**Dentons US LLP**
233 South Wacker Drive, Suite 5900
Chicago, IL 60606
Telephone: (312) 876-7442
Facsimile: (312) 876-7934

Jeffrey A. Zachman
**Dentons US LLP**
303 Peachtree Street NE
Suite 5300
Atlanta, GA 30308
Telephone: (404) 527-8442
Facsimile: (404) 527-4198

*Counsel (PHV) for Defendant*
*Philadelphia Indemnity Insurance Company*

<div align="center">

i

</div>

## TABLE OF CONTENTS AND SUMMARY OF ARGUMENT

MEMORANDUM IN SUPPORT ........................................................................................1

I.      FACTUAL BACKGROUND ....................................................................................4

II.     LEGAL STANDARD ..............................................................................................9

III.    ARGUMENT ..........................................................................................................10

A.    **The Second Amended Complaint Fails to Meet Rule 8's Pleading Requirements**.........................................................................................10

Under Federal Rule of Civil Procedure 8, "bare assertions . . . amount[ing] to nothing more than a 'formulaic recitation of the elements' of a [cause of action]" cannot withstand Rule 12(b)(6) motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Here, the Second Amended Complaint merely recites the language in the Policy and alleges that Plaintiffs were forced to suspend operations as a result of pandemic-related governmental closure orders. It does include any factual details establishing coverage or otherwise describe the alleged damage or loss for which Plaintiffs seek coverage. Thus, the Second Amended Complaint does not "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

B.    **The Second Amended Complaint Otherwise Fails To State A Claim Under The Plain Terms Of The Policy And Must Be Dismissed Pursuant to Rule 12(B)(6)** ....................................................................................................................12

Even if the Second Amended Complaint included facts establishing a plausible claim for relief, it does not state a claim under the Policy, which must be interpreted, like other contracts, based on its clear terms. *See Hybud Equip. Corp. v. Sphere Drake Ins. Co., Ltd.,* 64 Ohio St.3d 657, 597 N.E.2d 1096, 1102 (1992); *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, ¶11.

1.    **Plaintiffs' Breach of Contract Claim (Count III) Fails to Assert Facts Establishing A "Direct Physical Loss"**...................................................13

a)    **The Building Coverage and Business Income Coverage Do Not Apply Because Plaintiffs Have Not Alleged a "Direct Physical Loss."**.......................................................................................13

Plaintiffs seek coverage under the Building Coverage and Business Income Coverage in the Policy. Both those coverages require that Plaintiffs establish "direct physical loss or damage" to insured property. In Ohio, a "physical"

loss is "a harm to … property that adversely affects the structural integrity of the [property]." *Mastellone v. Lightning Rod Mut. Ins. Co*., 175 Ohio App.3d 23, 2008-Ohio-311, ¶61 (8th Dist. 2008). A threat of damage does not constitute physical loss or damage. *See, e.g., Newman Myers Kreines Gross Harris, P.C. v. Great Northern Ins. Co*., 17 F. Supp. 3d 323, 331 (S.D.N.Y. 2014).

Here, Plaintiffs do not allege any change to the structural integrity of the insured premises. They do not even allege that Coronavirus was present at any insured property. Thus, they are not entitled to coverage under the Building Coverage and Business Income Coverage.

**b) The Civil Authority Coverage Does Not Apply Because Plaintiffs Have Not Alleged Any Facts To Support Application Of That Coverage**...........................................................................17

Plaintiffs also seek coverage under the Civil Authority Coverage in the Policy. But that coverage is not triggered unless: 1) there is a direct, physical damage to property *other than* the insured premises; 2) that damaged property is located *within one mile* of the insured premises; 3) that property damage *caused* a civil authority to prohibit access to the insured premises.

Here, Plaintiffs have not alleged any physical damage to property other than Plaintiffs'. Nor have they alleged that any such damage is located within one mile of the insured premises. Nor have they alleged that any such damage caused a civil authority to prohibit access to any insured premises. The Ohio Closure Order Plaintiffs cite does not contain facts that would establish any of these elements, and certainly does not indicate that it was issued in response to damage within one mile of Plaintiffs' insured premises. *See United Air Lines, Inc. v. Ins. Co. of State of Pa*., 439 F. 3d 128, 134-135 (2nd Cir. 2006) (civil authority coverage not available where government closure order was not based upon "damage to adjacent premises"); *Dickie Brennan & Co., Inc*., 636 F.3d at 686-687 (civil authority coverage not available where order was issued in response to damage not located near insured); *Syufy Enters. v. Home Ins. Co. of Ind.*, No. 94-cv-00756, 1995 WL 129229, at *2 (N.D. Cal. Mar. 21, 1995).

**2. The Communicable Disease Endorsement Does Not Apply** ................20

iii

Coverage under the Communicable Disease Endorsement is not triggered unless "a 'communicable disease' . . . causes an actual illness at the insured premises." Here, Plaintiffs do not allege that there was any illness on the premises, much less that such illness caused their businesses to close or otherwise caused them financial losses.

3.    **The Virus Exclusion Precludes Coverage As To Seven Plaintiffs .......21**

The Policies issued to Dublin, New Albany, Tuttle Crossing, Powell, Gahanna, Chagrin Falls, and Westerville III contain a clear and unequivocal Virus Exclusion excluding any "loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." To the extent Plaintiffs allege any facts about their loss, they allege that the loss was caused by a "virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." Thus, their claim is barred. *See Lambi v. Am. Family Mut. Ins. Co.*, 498 Fed. Appx. 655, 656 (8th Cir. 2013) (finding similar virus exclusion clearly and unambiguously excluded liability coverage).

4.    **Plaintiffs' Bad Faith Claim (Count II) Fails As A Matter of Law ......22**

Plaintiffs' bad faith claim fails because their underlying coverage claim fails. *See Gehrisch v. Chubb Group of Ins. Cos.*, 645 Fed. App'x. 488, 494 (6th Cir.2016) (if the insured's breach of contract claim fails, so does his bad faith claim); *Wright State Physicians, Inc. v. Doctors Co.*, 2016-Ohio-8367, 78 N.E.3d 284, ¶28 (2nd Dist. Dec. 23, 2016) (no bad faith without coverage).

Independently, Plaintiffs' bad faith claim fails because PIIC had "reasonable justification" for denying Plaintiffs' claims. Because jurisprudence regarding Coronavirus is still developing, there is certainly binding authority holding that the language in the Policies covers business interruption losses related to COVID-19. PIIC's coverage decision is therefore reasonably justified given the language in the Policies and the undeveloped state of the law at the time Plaintiffs submitted their claims. *See Addington v. Allstate Ins. Co.*, 142 Ohio App. 3d 677, 681, 756 N.E.2d 750, 753 (2001).

IV.    **CONCLUSION** ...............................................................................................**23**

**CERTIFICATE OF SERVICE** .................................................................................**24**

iv

## MEMORANDUM IN SUPPORT

Plaintiffs seek coverage under Commercial Lines insurance policies issued by PIIC (collectively, the "Policies"[1], attached as Exhibit 1)[2], providing property insurance coverage for Plaintiffs' various business premises (the "Covered Properties"). (SAC, ECF No. 20-1, ¶ 6.) Specifically, the Second Amended Complaint ("SAC") alleges that PIIC improperly denied coverage for lost business income, extra expense and interruption by civil authority caused by the COVID-19 pandemic and related orders by government officials requiring the closure of non-essential businesses as a precaution to prevent further spread of the disease. (SAC ¶¶ 10, 13, 15-18, 20-23). Count I seeks a declaration that: (a) the Plaintiffs' losses are covered under the Policy; (b) PIIC must pay the full amount of allegedly covered losses Plaintiffs have purportedly sustained; (c) certain government-issued closure orders have prohibited access to the insured premises, as defined by the Policies; (d) the government-issued orders trigger coverage; and (e) the Policies provide Civil Authority coverage for any current and future government-issued closure orders related to COVID-19. Count II seeks bad faith damages and attorney's fees for PIIC's alleged bad faith refusal to pay Plaintiffs' claims. Count III seeks breach of contract damages. Plaintiffs' claims fail for multiple reasons.

---

[1] Exhibit 1 includes all Plaintiff's Policies. Those Policies appear in the order that Plaintiffs are listed in the caption of the SAC.

[2] This Court may consider the Policies even though they are not attached to the SAC. *See Stein v. HHGREGG, Inc.*, 873 F.3d 523, 528 (6th Cir. 2017) ("[A] court may consider exhibits attached to the complaint, public records, items appearing in the record of the case, and exhibits attached to defendant's motion to dismiss, so long as they are referred to in the complaint and are central to the claims contained therein, without converting the motion to one for summary judgment."); *Stevens Transp. TL, Inc. v. Great Am. Ins. Co.*, No. 1:11-CV-00236, 2012 WL 1564207, at *3 (S.D. Ohio May 2, 2012) (Court allowed to consider insurance contract between parties even though it was not attached to the complaint because it was incorporated in the complaint by reference and was an integral part of the complaint).

US_Active\115124622\V-4

At the outset, the SAC does not meet the *Twombly/Iqbal* pleading standard because it does not allege facts sufficient to state a plausible claim for relief under Rule 8, Fed. R. Civ. P. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677-81 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-63 (2007). Plaintiffs' Policies require, among other things, "direct *physical* loss of or damage to" Covered Property, as a prerequisite to Business Income or Extra Expense coverage. Similarly, a prerequisite to Civil Authority coverage is the issuance of civil authority orders barring access to Covered Property in response to "direct physical loss or damage" to properties other than the Covered Property. Although Plaintiffs' SAC sets forth much about the COVID-19 pandemic and resulting emergency orders, it is devoid of any specific facts establishing any actual physical loss or damage to any of Plaintiffs' business premises, save for conclusory non-sequiturs asserting that issuance of gubernatorial orders closing businesses generally, or the supposedly "ubiquitous nature" of COVID-19, in some unexplained way constitutes "direct physical loss or damage." (SAC, ¶¶ 13, 18, 22-23, 28-31, 34, 54, 56). Those bald recitals are unsupported by any facts and are not sufficient to "nudge [Plaintiffs'] claims across the line from conceivable to plausible." Thus, the SAC must be dismissed. *Twombly,* 540 U.S. at 555.

The SAC also fails to state a claim under Rule 12(b)(6) for other reasons. First, seven Plaintiffs' claims[3] for Business Income, Extra Expense and Civil Authority coverages are barred because their insurance policies include a clear, unambiguous, and specific exclusion for any "loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces

---

[3] The seven PIIC policies that contain the Virus Exclusion were issued to Dublin Ashanik, LLC d/b/a The Goddard School of Dublin ("Dublin"); Campbell Family Childcare, Inc. d/b/a The Goddard School of New Albany ("New Albany"); Park School of Dublin, LLC d/b/a The Goddard School of Dublin (Tuttle Crossing) ("Tuttle Crossing"); Burkhold Enterprises, LLC d/b/a The Goddard School of Powell ("Powell"); Park School of Gahanna, LLC d/b/a The Goddard School of Gahanna ("Gahanna"); DiMuzio-Speranza Enterprises, Inc. d/b/a The Goddard School of Chagrin Falls ("Chagrin Falls"); and Chambers Holding, Inc. d/b/a The Goddard School of Westerville III ("Westerville III").

2

or is capable of inducing physical distress, illness or disease" (the "Virus Exclusion"). (*See* Exhibit 8). Plaintiffs unquestionably claim "damage caused by or resulting from" a "virus" that induces "physical distress, illness or disease," and thus falls squarely within the Virus Exclusion *Id.*

Next, all Plaintiffs' claims fail because the losses they allege are not covered by the Policy even in the absence of the Virus Exclusion. The Business Income and Extra Expense Coverages require that the insured establish "direct physical loss or damage" to the insured premises. To establish direct physical loss or damage under applicable law, Plaintiffs must show that the property suffered demonstrable, physical alteration. *See e.g. Philadelphia Parking Auth. v. Fed. Ins. Co.*, 385 F. Supp. 2d 280 (S.D.N.Y. 2005); *Mastellone v. Lightning Rod Mut. Ins. Co.*, 175 Ohio App.3d 23, 2008-Ohio-311, ¶61 (8th Dist. 2008). The SAC, however, fails to set forth any facts demonstrating that any Plaintiff's business premises suffered any physical alteration, impairment or damage. Although the SAC repeatedly parrots the phrase "direct physical loss," it does not specify the nature of any physical loss or damage, nor does it explain how the spread of an infectious disease throughout the United States would result in tangible physical loss or damage to Plaintiffs' business premises.

Similarly, Civil Authority Coverage requires that access to Plaintiffs' premises be prohibited by civil authorities in response to dangerous physical conditions as a result of "direct physical loss of or damage to" other properties outside Plaintiffs' insured premises. The SAC contains no allegations establishing that the governmental closure orders were a result of "direct physical loss of or damage to" any nearby structures. In fact, according to the allegations of the SAC, the governmental closure orders were issued "'to avoid an imminent threat with a high probability of widespread exposure to COVID-19 with a significant risk of substantial harm to a large number of people in the general population.'" (SAC, ¶ 47.) So the orders were not issued as

a result of "direct physical loss or damage to" any property at all, as required to trigger coverage, but instead were issued to protect the public from COVID-19 (a risk that had nothing to do with any particular property or any property at all). So, all of Plaintiffs' claims fail as a matter of law.

Coverage likewise is not available under the Communicable Disease Endorsement, which requires that the premises be shut down by a local state or federal Board of Health due to the outbreak of a communicable disease that "causes an **_actual_** illness **_at the insured premises_**." *See* Exhibit 7 (emphasis added). Although Plaintiffs allege in conclusory fashion that each school either had individuals on their premises who showed "symptoms consistent with COVID-19" (and innumerable other ailments) or who "potentially had contact with someone diagnosed with COVID-19," Plaintiffs allege no actual COVID-19 outbreak or illness at any insured premises,[4] nor do they allege that any particular premises were ordered shut down due to the actual presence of the disease at the premises.[5]

In sum, the allegations of the SAC simply do not establish a plausible basis for relief based on the clear and unambiguous provisions of the Policies. Accordingly, the SAC fails to state a claim and should be dismissed in its entirety as to all Plaintiffs.

## I.    FACTUAL BACKGROUND

Plaintiffs own and operate private preschools in Ohio. (SAC ¶ 1). Plaintiffs Dakota Girls, LLC d/b/a The Goddard School of Grove City ("Dakota Girls") and Elliott Care, LLC d/b/a The Goddard School of Worthington ("Elliott Care") originally commenced this action on April 22,

---

[4] Indeed, at paragraph 30 of the SAC, Plaintiffs expressly concede that they have no evidence that at their premises actually suffered from COVID-19.
[5] Moreover, the history of the pandemic in Ohio strongly suggests that, on March 26, 2020, when their businesses were alleged to have been closed (SAC, ¶¶ 45-50), it was extremely unlikely that anyone associated with their premises actually suffered from COVID-19. At that time, there were less than 900 diagnosed cases in an Ohio of nearly 12 million people. *See* https://www.worldometers.info/coronavirus/usa/ohio/ (lasted visited July 19, 2020); https://worldpopulationreview.com/states/ohio-population (last visited July 20, 2020).

2020. (*See* ECF No. 1). On May 26, 2020, Plaintiffs filed a First Amended Complaint ("Amended Complaint"). (*See* ECF No. 8). The Amended Complaint was substantively similar to the original Complaint, but named 13 additional preschools as Plaintiffs. [6] On July 6, 2020, Plaintiffs filed their SAC. (*See* ECF No. 20-1). The SAC named two additional preschools as Plaintiffs and added allegations related to the Extra Expense Coverage and the Communicable Disease Endorsement.[7] Plaintiffs seek coverage under their Commercial Lines Policies providing property coverage for Plaintiffs' businesses. (SAC ¶ 6; *see, generally,* Ex. 1).

The Policies all contain the following forms pertinent to the SAC[8]:

- Building and Personal Property Coverage Form No. CP 00 10 10 12, attached as Exhibit 3;

- Business Income (and Extra Expenses) Coverage Form No. CP 00 30 10 12, attached as Exhibit 4;

- Causes of Loss—Special Form No. CP 10 30 09 17, attached as Exhibit 5;

- Elite Property Enhancement: Day Care Centers Endorsement No. PI-EPE-DY (01/07), attached as Exhibit 6; and

- Communicable Disease and Water-Borne Pathogen – Business Income and Extra Expense Coverage Endorsement No. PI-CD-001 (02/08), attached as Exhibit 7.

---

[6] The 13 additional Plaintiffs were Dublin Ashanik, LLC d/b/a The Goddard School of Dublin; Educare of Greene, Inc. d/b/a The Goddard School of Uniontown; Campbell Family Childcare, Inc. d/b/a The Goddard School of New Albany; Lillypad Learning Center, LLC d/b/a The Goddard School of Lewis Center; Fuqua Norman, Inc. d/b/a The Goddard School of Centerville; Eagle School of Hilliard Ohio, Inc. d/b/a The Goddard School of Hilliard; Powell Enterprises, Inc. d/b/a the Goddard School of Westerville I; Park Enterprises of Ohio, LLC d/b/a The Goddard School of Canal Winchester; Park School of Dublin, LLC d/b/a The Goddard School of Dublin (Tuttle Crossing); Fixari School of Pickerington, LLC d/b/a The Goddard School of Pickerington; Fixari School of Reynoldsburg, LLC d/b/a The Goddard School of Reynoldsburg; Burkhold Enterprises, LLC d/b/a The Goddard School of Powell; and Park School of Gahanna, LLC d/b/a The Goddard School of Gahanna.

[7] The 2 additional Plaintiffs are DiMuzio-Speranza Enterprises, Inc. d/b/a The Goddard School of Chagrin Falls and Chambers Holding, Inc. d/b/a The Goddard School of Westerville III.

[8] Exhibit 2 identifies the location of each of these forms within each Plaintiff's Policy. For ease of reference, this Motion cites to the applicable forms, which are attached as Exhibits 2 through 7.

All the Policies generally insure for certain "Covered Causes of Loss."  *See* Exhibit 1; *see also* Exhibit 5, p. 1.  As Plaintiffs allege and as set forth in the Policies, "Covered Causes of Loss means direct physical loss unless the loss is excluded or limited in this policy."  (SAC ¶ 10; Exhibit 5, p. 1).

Where a loss arises from a "Covered Cause of Loss," the Policies provide certain specific coverages enumerated therein.  One of these coverages covers loss to Plaintiffs' buildings and personal property ("Building Coverage").  Like the "Covered Causes of Loss" more generally, however, the Building Coverage extends *only* to "direct or physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss."  (Ex. 3, p. 1).

Similarly, the Policies provide coverage for lost business income ("Business Income Coverage").  That coverage is triggered *only if* Plaintiffs' operations are suspended as a result of "direct physical loss of or damage to" the insured premises.  Specifically, the Policies provide Business Income Coverage for lost net income incurred during the "Period of Restoration"[9] "when your covered building or business personal property listed on the Declarations is damaged by a **Covered Cause of Loss**."  (Ex. 6, p. 6 (emphasis added)).

Similarly, the Policies provide coverage for "Extra Expenses" incurred as a result of a direct physical loss ("Extra Expense Coverage") and define "Extra Expense" as follows:

> Extra Expense means necessary expenses you incur during the "Period of Restoration" that you would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss.

*Id*. at p. 7.

---

[9] "Period of Restoration" is defined in the Policy as the period of time that: "(1) Begins with the date of physical loss or damage caused by or resulting from any Covered Cause of Loss; and (2) Ends on the date when the property should be repaired, rebuilt or replaces with reasonable speed or similar quality."  (Ex. 6, p. 7).

6

The Policies also provide coverage for certain losses caused by the action of a civil authority ("Civil Authority Coverage") (*see* SAC ¶¶ 20-21). That language provides coverage "for the actual loss of 'Business Income' you sustain and necessary 'Extra Expense' caused by action of civil authority that prohibits access to the described premises due to direct physical loss of or damage to property, other than at the described premises, caused by or resulting from any **Covered Cause of Loss**." (Ex. 6, p. 7 (emphasis added)).

Thus, the Building Coverage, Business Expense Coverage, and Extra Expense Coverage all require Plaintiffs to establish "direct physical loss of or damage to" the insured premises. Similarly, the Civil Authority Coverage requires Plaintiffs to establish that a civil authority barred access to Plaintiffs' premises in response to direct physical loss or damage to other property. (Ex. 6, p. 7). So, in all cases, direct *physical* loss of or damage to property is a prerequisite to coverage.[10]

Seven of the Plaintiffs' Policies are also subject to a Virus Exclusion that excludes coverage for any "loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." (Ex. 8, p. 1).[11] These seven Policies also includes a conspicuous notice highlighting the significance of the Virus Exclusion and encouraging Plaintiffs to read all the Policy endorsements carefully. (a copy of the notice is attached as Exhibit 9).

Finally, the Policies also contain a Communicable Disease and Water Borne Pathogen endorsement that provides certain business income and extra expense coverage during a "period

---

[10] The sole exception is for coverage under the Communicable Disease and Water-Borne Pathogen Endorsement. *See* Exhibit 7. However, coverage under the endorsement is not triggered unless "a 'communicable disease' . . . causes an **actual illness** at the insured premises." *Id.* (emphasis added). Here, Plaintiffs do not allege any actual illness at the insured premises.
[11] *See supra* fn. 3.

7

of restoration," where a shutdown or suspension of business operations has been "ordered by a local, state of federal Board of Health…due directly to an outbreak of a 'communicable disease' or a 'water-borne pathogen' that causes an actual illness at the insured premises." *See* Exhibit 7.

Against that backdrop, Plaintiffs allege that COVID-19 has spread rapidly throughout the country and has been declared a pandemic by the World Health Organization. (SAC  ¶ 40). Although no Plaintiff alleges that any children or staff had COVID-19 while on its premises, Plaintiffs vaguely allege that there were unidentified individuals at their properties who allegedly showed some of the symptoms associated with COVID-19 (though Plaintiffs do not identify those individuals, their locations, or the dates during which they were present, much less specify their symptoms) or "*potentially* had contact with someone diagnosed with COVID-19."  (*Id.* ¶ 29.) Plaintiffs do not allege any actual outbreak or presence of COVID-19 at any insured premises, nor do they claim that any civil shutdown orders were the result of any actual incidents of disease at any of the premises.

Instead, Plaintiffs allege that the Governor of Ohio, Ohio Director of Health, and other public officials ordered all non-essential or non-life-sustaining businesses generally to close in an effort to limit the spread of the disease, in part to "avoid an imminent threat with a high probability of widespread exposure to COVID-19 with a significant risk of substantial harm to a large number of people in the general population." (the "Closure Orders", SAC ¶¶ 29-30, 47).  Plaintiffs claim that in response to those general Closure Orders, Plaintiffs closed their businesses on March 25, 2020 and gave notice of their claims to PIIC "[i]n or around March 2020."  (SAC ¶ 60).  PIIC denied Plaintiffs' claims and indicated it would not be providing coverage to Plaintiffs because there has been no direct physical loss or damage to Plaintiffs' properties.[12] (SAC ¶  61).

---

[12] PIIC is also filing herewith a Motion to Sever the claims of the various plaintiffs.  Should any of the claims survive this motion to dismiss, and bereft of facts though the SAC may be, the

Following PIIC's denial of Plaintiffs' claims, Plaintiffs filed this action seeking a declaratory judgment (Count I) that: (a) they are entitled to coverage under the Policy; (b) Plaintiffs' losses related to the presence of COVID-19 and/or one or more of the Closure Orders are insured losses under the Policies; (c) PIIC is obligated to pay Plaintiffs for those losses; (d) the Closure Orders have prohibited access as defined in the Policies; (e) the Closure Orders trigger coverage; and/or (f) the Policies provide coverage to Plaintiffs for any current and future government-issued orders that close businesses in Ohio due to physical loss of or damage related to COVID-19.  (SAC ¶¶ 68, Prayer for Relief, p. 18).  Plaintiffs also seeks damages for bad faith (Count II) and breach of contract (Count III) as a result of PIIC's failure and refusal to provide coverage.  (SAC ¶¶ 58, 60, 69-88).

## II.    LEGAL STANDARD

Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Failure to plead sufficient facts to state a claim to relief that is "plausible on its face" warrants dismissal.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  It is a Plaintiffs' burden to show its "entitlement to relief" with more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action."  *Twombly*, 550 U.S. at 555.

Although a Rule 12(b)(6) motion to dismiss accepts the complaint's well-pleaded factual allegations as true for purposes of the motion, the Court is not required to accept mere conclusions

---

adjudication of any remaining claims will be highly individualized and will depend on the unique facts and circumstances of each claim, the different civil authority orders applicable to each Plaintiff, the specific damage, if any, to each Plaintiff's respective business premises and the respective "Period of Restoration" attributable to each.  Similarly, Plaintiffs' bad faith claims will depend on the manner in which each individual claim was presented, investigated and processed.  Accordingly, and as more fully set forth in PIIC's Motion to Sever, the various Plaintiffs' claims are not properly joined in this action.

or "bare assertions … amounting to nothing more than a 'formulaic recitation' of the elements" of a claim. *Iqbal*, 556 U.S. at 678, 129 S.Ct. at 1949, citing *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955. "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement."  *Iqbal*, 556 U.S. at 678.  The Court need not, however, "accept conclusory allegations or conclusions of law dressed up as facts."  *Erie County, Ohio v. Morton Salt, Inc.*, 702 F.3d 860, 867 (6th Cir.2012) (citing *Iqbal*, 556 U.S. at 678)).

Applying those standards here, and as more fully set forth below, Plaintiffs' SAC must be dismissed for failure to state a claim.

## III.    ARGUMENT

### A.    The SAC Fails To Meet Rule 8's Pleading Requirements.

Although Plaintiffs seek coverage under policies of property insurance that require a "direct physical loss of or damage to" insured premises, Plaintiffs plead no facts describing any physical change, alteration, or damage to the Covered Properties.  Instead, the SAC just repeatedly recites the naked phrase "direct physical loss" without explaining what actual physical loss occurred is or how either the pandemic or government orders could have (much less did) physically alter or damage the Covered Properties.  (SAC ¶ 34) (asserting, again as a conclusion, that "Losses caused by a pandemic, including losses caused by the novel coronavirus known as COVID-19 and/or losses caused by a Closure Order, are a Covered Cause of Loss…."); *id.* at ¶¶ 54-56 (the COVID-19 virus and Closure Orders have caused "direct physical loss of or damage Plaintiffs' Covered Properties and business operations"); *id*. at ¶ 58 (asserting, without any facts to support, that COVID-19 is "physically impacting Plaintiffs"); *id*. at ¶¶ 13, 18, 23, 59 (asserting legal conclusion that Plaintiffs are "entitled to coverage" under the Building Coverage, Business Income Coverage and Civil Authority Coverage).  The SAC does not identify which properties suffered

10

physical loss or damage, what the damage or loss was on any property, or how there was any *physical* impact on any property at all.

These threadbare conclusions are insufficient to state a claim and fall far short of *Twombly's* requirement that the complaint contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570. *See also Iqbal*, 556 U.S. at 678, citing *Twombly*, 550 U.S. at 555 ("bare assertions, much like the pleading of conspiracy in *Twombly*, amount[ing] to nothing more than a 'formulaic recitation of the elements' of a constitutional discrimination claim" cannot withstand Rule 12(b)(6) motion to dismiss).

The only *actual* facts[13] set forth in the SAC allege that Plaintiffs were forced to suspend operations as a result of pandemic-related governmental closure orders (SAC ¶¶ 46-47) and that there were unidentified individuals at each school who showed symptoms of COVID-19 (though none tested positive for the virus) or "potentially had contact with someone diagnosed with COVID-19" but that no one had actually been confirmed of such diagnosis. (*Id*. at ¶ 29). Neither of those allegations, however, plausibly describe "direct physical loss or damage" to property, nor do they explain how the mere existence of a viral pandemic can cause a physical alteration of or physical impairment to Plaintiff's properties, as opposed to mere economic impact. Indeed, the SAC does not allege any facts regarding any specific property, much less the damage that each property suffered. Accordingly, the SAC sets forth no facts establishing "direct physical loss or damage" to the Covered Properties necessary to trigger Building, Business Income or Civil Authority Coverages.

---

[13] A fact is "[s]omething that actually exists" or "[a]n actual or alleged event or circumstance, as distinguished from its legal effect, consequence, or interpretation." *Black's Law Dictionary* (10th ed. 2014).

Similarly, Plaintiffs plead no facts establishing the government orders were directly in response to any physical loss of or damage to other property, which is prerequisite to any Civil Authority Coverage. *See Philadelphia Parking Auth.*, 385 F. Supp. 2d at 286-88 (airport parking company's financial losses arising from government-issued orders grounding all flights after 9/11 did not satisfy insurance policy's direct physical loss requirement because "the claimed loss must be physical in nature"). And the complaint is totally lacking in allegations establishing an actual outbreak or illness at any of the insured premises, much less a shutdown order in response to "an actual illness at the insured premises," as required for Communicable Disease coverage. So, there are no facts pled that would establish a plausible claim for relief under the Policies as required under Rule 8. *Twombly* and *Iqbal* therefore control and the SAC must be dismissed.

**B.     The SAC Otherwise Fails To State A Claim Under The Plain Terms Of The Policy And Must Be Dismissed Pursuant To Rule 12(B)(6).**

Quite apart from the Complaint's Rule 8 deficiencies, the SAC otherwise fails to state a claim on which relief can be granted, and must be dismissed under Rule 12(b)(6). Under Ohio law, insurance policies are construed in accordance with the same rules as other written contracts. *Hybud Equip. Corp. v. Sphere Drake Ins. Co., Ltd.*, 64 Ohio St.3d 657, 597 N.E.2d 1096, 1102 (1992). Thus, the interpretation of an insurance policy is a question of law for the Court. *Sharonville v. American Employers Ins. Co.*, 109 Ohio St.3d 186, 2006-Ohio-2180, ¶6. "When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties." *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, ¶11. The Court must "presume that 'words are used for a specific purpose and ... avoid interpretations that render portions meaningless or unnecessary.'" *Gehrisch v. Chubb Group of Ins. Cos.*, 645 Fed.Appx. 488, 491 (6th Cir.2016) (quoting *Wohl v. Swinney*, 118 Ohio St.3d 277, 2008-Ohio-2334, ¶22).

12

The party seeking to recover on an insurance policy has the burden of demonstrating coverage under the policy. *Clifford v. Church Mut. Ins. Co.*, 655 Fed. Appx. 293, 297 (6th Cir.2016) (citing *Chicago Title Ins. Co. v. Huntington Natl. Bank,* 87 Ohio St.3d 270, 719 N.E.2d 955, 959 (1999)). Plaintiffs bear the burden of proving they sustained a covered loss under the PIIC policies – a burden they cannot sustain.

      **1.**      **Plaintiffs' Breach Of Contract Claim (Count III) Fails To Assert *Facts* Establishing A "Direct Physical Loss."**

            **a)**      **The Building Coverage, Business Income Coverage, And Extra Expenses Coverage Do Not Apply Because Plaintiffs Have Not Alleged A "Direct Physical Loss."**

The SAC fails to state a claim under the Building Coverage, Business Income Coverage, or Extra Expenses Coverage because it does not allege facts showing "direct physical loss or damage" to Plaintiffs' properties.

"Direct physical loss or damage" is prerequisite to the Building Coverage, Business Income Coverage, and Extra Expenses Coverage under which all Plaintiffs seek to recover. Specifically, the Building Coverage requires "direct or physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss." (Ex. 3, p. 1).

Similarly, the Policies provide that PIIC will only pay for Business Income losses or Extra Expenses "incurred when your covered building or business personal property listed on the Declarations is damaged by a **Covered Cause of Loss**" which must be a "**direct physical loss**." (Ex. 6, p. 6 (emphasis added)). Thus, to establish coverage under the Building Coverage, Business Income Coverage, or Extra Expenses Coverage, Plaintiffs must plead *facts* showing it suffered a "direct physical loss."

Under Ohio law, a "physical" loss is "a harm to … property that adversely affects the structural integrity of the [property]." *Mastellone v. Lightning Rod Mut. Ins. Co.*, 175 Ohio App.3d 23, 2008-Ohio-311, ¶61 (8th Dist. 2008).[14] Citing *Couch on Insurance*, the court of appeals in *Mastellone* recognized: "The requirement that the loss be 'physical,' given the ordinary definition of that term, is widely held to exclude alleged losses that are intangible or incorporeal, and, thereby, to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property[.]"  10A *Couch on Insurance* §148:46 (3d ed. 1998); *Philadelphia Parking Auth. v. Fed. Ins. Co.*, 385 F. Supp. 2d 280, 286-88 (S.D.N.Y. 2005) (court found financial losses unrelated to physical loss or physical damage at the insured premises did not satisfy the policy's direct physical loss requirement because "the claimed loss must be physical in nature").

Here, Plaintiffs do not allege that the structural integrity of any property at their premises has been adversely affected.  They do not make any allegations describing physical loss or damage at ***any*** of the ***seventeen*** insured premises at issue (much less a loss that affected the structural integrity of those premises) or otherwise distinguish or describe the loss allegedly suffered by any one of the fifteen Plaintiffs.  Instead, Plaintiffs merely allege that a "[p]hysical loss of, or damage to" property "***may*** be may be reasonably interpreted to occur when a covered cause of loss ***threatens*** or renders property ***unusable*** or ***unsuitable*** for its intended purpose or ***unsafe*** for normal human occupancy and/or continued use"  (SAC ¶12 (emphasis added)) and that there were

---

[14]*Mastellone*, as it was authored by now Ohio Supreme Court Justice Judge Melody J. Stewart, is particularly instructive.  As the Sixth Circuit explained in *Penton Media, Inc. v. Affiliated FM Ins. Co.*, 245 Fed. App'x. 495, 499 (6th Cir. 2007): "In analyzing a state-law contract claim brought in federal court based on diversity jurisdiction, 'this Court applies state law in accordance with the controlling decision of the Ohio Supreme Court.  If the state supreme court has not yet addressed the issue presented, this Court must predict how it would rule, by looking to 'all available data,' including state appellate decisions.'"

unidentified individuals on unspecified premises that showed symptoms or "***potentially***" came in contact with someone diagnosed with COVID-19.  (*Id.* at ¶ 29).

A ***threat*** of damage, however, does not constitute physical loss or damage.  *See*, *e.g.*, *Newman Myers Kreines Gross Harris, P.C. v. Great Northern Ins. Co.*, 17 F. Supp. 3d 323, 331 (S.D.N.Y.2014) (phrase "direct physical loss or damage" did not include closure of insured law firm after utility company preemptively shut off power to lower Manhattan in advance of Superstorm Sandy); *Roundabout Theatre Co., Inc. v. Continental Casualty Co.*, 751 N.Y.S.2d 4, 302 A.D.2d 1, 7 (N.Y. App. Div. 2002) (phrase "direct physical loss or damage to [insured's] property" did not include loss of use when insured's theatre became inaccessible because city closed nearby street after nearby structure collapsed).

Moreover, despite Plaintiffs' conclusory assertions to the contrary (which must be disregarded), Plaintiffs' premises were not ***in fact*** rendered unusable, unsuitable or unsafe. Noticeably absent from the SAC is any allegation that the Coronavirus was specifically ***present*** inside any of Plaintiffs' premises.[15]  Instead, the SAC merely alleges that there were unidentified individuals on unspecified premises that showed "symptoms consistent with COVID-19," or who ***may potentially*** have come in contact with someone diagnosed with COVID-19.  The SAC does not, however, specify who these individuals were, when they were on the premises, or even allege that they were actually infected with COVID-19 themselves.  (SAC ¶¶ 29-30).

And even if Plaintiffs ***had*** provided those details, the presence of the Coronavirus would not render Plaintiffs' premises unusable, unsuitable or unsafe – much less have caused "physical

---

[15] Plaintiffs do allege that "COVID-19 and/or one or more Closure Orders have caused direct physical loss of or damage to Plaintiffs' Covered Properties and business operations, requiring suspension of operations at the Covered Properties" and that "COVID-19 is physically impacting Plaintiffs."  (SAC ¶¶ 56, 58).  But such allegations are the quintessential "conclusory allegation" of which *Twombly* and *Iqbal* warned.  The allegation need ***not*** be accepted by the Court.

loss or, or damage to" property. At most, the presence of the Coronavirus inside Plaintiffs' premises would have required cleaning or sanitizing – a purely economic loss that the courts have recognized is ***not*** "physical loss of or damage to property."[16] *See Mastellone*, 2008-Ohio-311, ¶¶64-68 (mold on exterior siding of house was not "physical damage" because it could be removed by ***cleaning*** with bleach); *Mama Jo's, Inc. v. Sparta Ins. Co.*, No. 17-cv-23362, 2018 WL 3412974, at \*9 (S.D. Fla. June 11, 2018) ("***cleaning*** is not considered direct physical loss"). In concluding that cleaning and remediation expenses related to mold and bacterial contamination were "not tangible, physical losses, but economic losses," the Sixth Circuit, relying upon *Mastellone* and similar authorities across the nation, explained in *Universal Image Prods., Inc. v. Federal Ins. Co.*, 475 Fed. App'x. 569, 573-74 (6th Cir. 2012), that the losses to the property of the contamination could be cleaned and that the building itself was not physically damaged.[17]

---

[16] In an effort to claim that their properties have been "damaged", Plaintiffs wrongly claim that the Centers for Disease Control and Prevention (CDC) "has found that the COVID-19 virus can last on surfaces such as those in Plaintiffs' private preschools for up to seventeen (17) days, thereby 'damaging'—those surfaces". (SAC ¶53). No source is given for this allegation. However, to the extent the CDC made such a finding, it no longer stands by it. *See* https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/how-covid-spreads.html (last visited on June 15, 2020). Indeed, the CDC has expressly stated that prolonged business shutdowns should ***not*** be a necessary result of Coronavirus at a given premises. Rather, simple cleaning and disinfecting is recommended. *See* https://www.cdc.gov/coronavirus/2019-ncov/faq.html#Cleaning-and-Disinfection (last visited on June 15, 2020). In either event, the allegation that the COVID-19 virus theoretically can survive on surfaces, does not establish that it did, or that the virus in fact was ever present at the premises, or that it caused any physical loss or damage to the Covered Properties.

[17] In support of this position, the Sixth Circuit relied on various cases that have interpreted this issue in other jurisdictions. *See, e.g.*, *Columbiaknit, Inc. v. Affiliated FM Ins. Co.*, No. Civ. 98-434-HU, 1999 WL 619100, at \*7 (D. Or. Aug. 4, 1999) (holding that a policyholder could not recover under a policy requiring "physical loss" unless the claimed mold physically and demonstrably damaged property); *MRI Healthcare Ctr. of Glendale, Inc. v. State Farm Gen. Ins. Co.*, 187 Cal. App. 4th 766, 115 Cal.Rptr.3d 27, 37-38 (Cal. Ct. App. 2010) ("A direct physical loss contemplates an actual change in insured property then in a satisfactory state, occasioned by accident or other fortuitous event directly upon the property causing it to become unsatisfactory for future use or requiring that repairs be made to make it so.") … *Mastellone v. Lightning Rod Mut. Ins. Co.*, 175 Ohio App.3d 23, 884 N..2d 1130, 1144 (Ohio Ct. App. 2008) (holding that mold does not constitute "physical damage" because "[t]he presence of mold did not alter or otherwise affect the structural integrity of the [property].").

For all these reasons, the SAC lacks well pleaded facts establishing any physical loss or damage to any of Plaintiffs' properties.  Beyond Plaintiffs' "threadbare assertions" of "physical loss of or damage to" property, the SAC provides no description or details of the claimed "physical loss" or explain how the virus in any way caused or conceivably could have caused a "demonstrable, physical alteration" at Plaintiffs' properties.  *See Twombly*, 550 U.S. at 555 (dismissing claim where allegations merely tracked conspiracy requirement); *Iqbal*, 556 U.S. at 678, citing *Twombly*, 550 U.S. at 555 ("bare assertions … amount[ing] to nothing more than a 'formulaic recitation of the elements'" of a claim do not withstand Rule 12(b)(6) motion to dismiss). Accordingly, even taking the well pleaded facts of the SAC as true, it fails to state a claim for coverage under the Building Coverage, Business Income Coverage, or Extra Expenses Coverage.

> **b)**     **The Civil Authority Coverage Does Not Apply Because Plaintiffs Have Not Alleged Any Facts To Support Application Of That Coverage.**

Mirroring similar requirements found in the Building and Business Income Coverages, the Civil Authority provision provides coverage "for the actual loss of 'Business Income' you sustain and necessary 'Extra Expense' caused by action of civil authority that prohibits access to the described premises due to direct physical loss of or damage to property, other than at the described premises, caused by or resulting from any **Covered Cause of Loss**."  (Ex. 6, p. 7 (emphasis added)).

Accordingly, to establish coverage, and as Plaintiffs acknowledge in their SAC (SAC ¶ 21), Plaintiffs must show "distinct, demonstrable, physical alteration" to property other than their own, resulting in an order from civil authority prohibiting access to the insured premises.  *See Dickie Brennan & Co. v. Lexington Ins. Co.*, 636 F.3d 683, 685 (5th Cir. 2011) (interpreting an almost identical coverage provision and holding that "the action of civil authority prohibiting

17

access to the described premises must be caused by direct physical loss of or damage to property

other than at the described premises; and [] the loss or damage to property other than the described

premises must be caused by or result from a covered cause of loss as set forth in the policy."); 

*Philadelphia Parking Auth.*, 385 F. Supp. 2d at 289 (applying Pennsylvania law); *Kelaher, Connell* 

*& Conner, P.C. v. Auto-Owners Ins. Co*., 2020 WL 886120, 8 (D.S.C. Feb. 24, 2020); *Not Home* 

*Alone, Inc. v. Philadelphia Indem. Ins. Co*., 2011 WL 13214381, 6 (E.D. Tex. Mar. 30, 2011).

Here, Plaintiffs have not alleged--even in conclusory fashion--any physical damage to

property other than Plaintiffs'.[18] (*See* Ex. 6, p. 7 (insured must show damage to property other than

Plaintiffs' property.  Nor have Plaintiffs alleged, even in conclusory fashion, that "access to the

area immediately surrounding the damaged property [was] prohibited by civil authority as a result

of the damage."  *Id*.  Plaintiffs must allege *facts* establishing all of these elements to be entitled to

Civil Authority Coverage.  *See Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964-65.

While the SAC does allege the issuance of governmental closure orders in California,

Illinois, and New York City that purport to declare that the virus had a physical impact on property,

such governmental orders cannot retroactively declare a physical impact by the virus when there

is none and further have no bearing on whether Plaintiffs are entitled to Civil Authority Coverage

under Policies in jurisdictions, like Ohio, which are not subject to such counter-factual

declarations.  (SAC ¶ 32).  The only order relevant to Plaintiffs' claims is the pronouncement that

precipitated the shutdown of Plaintiffs' facilities: the March 24, 2020, Order issued by the Ohio

Director of Health, Amy Acton, MD, MPH ("Ohio Closure Order").[19]  But the Ohio Closure Order

---

[18] Plaintiffs do allege that "Upon information and belief, business in the relevant geographic area surrounding Plaintiffs' schools suffered direct physical loss of or damage to their properties as a result of COVID-19" (*see* ECF No. 20-1 (SAC) at ¶ 55 PAGEID#: 5338-9), but such allegations are the quintessential "conclusory allegation" of which *Twombly* and *Iqbal* warned.  The allegation need *not* be accepted by the Court.
[19] Plaintiffs reference and quote from the Ohio Closure Order, but fail to attach it to their SAC.  A copy of the Ohio Closure Order is attached as Exhibit 10.

18

was to prevent exposure of the Coronavirus to the "general population, including the elderly and people with weakened immune systems and chronic medical conditions[.]'" It was not issued in response to dangerous physical conditions resulting from property damage occurring to property other than the insured premises, as required under the Policies. (Ex. 6, p. 7).[20]

In the absence of a direct nexus between a civil authority "shut down" order and actual damage to the insured property (or nearby property), courts have regularly found no coverage for claims involving civil authority "shut down" orders–from post-9/11 airport closures to hurricane evacuations to civil unrest curfews. *See*, *e.g.*, *United Air Lines, Inc. v. Ins. Co. of State of Pa.*, 439 F. 3d 128, 134-135 (2nd Cir. 2006) (civil authority coverage not available for airport closure ordered after September 2011 terrorist attacks even though nearby Pentagon was damaged, since "the government's … decision to halt operations at the Airport … was based on fears of future attacks" and not upon "damage to adjacent premises"); *Dickie Brennan & Co., Inc.*, 636 F.3d at 686-687 (civil authority coverage not available to restaurateur when Mayor of New Orleans issued mandatory evacuation order in response to approaching hurricane; even though hurricane damaged other property in the Caribbean, evacuation order issued because of "possible future storm surge, high winds, and flooding" and not because of "physical damage to property, either distant property in the Caribbean or property in Louisiana"); *Syufy Enters. v. Home Ins. Co. of Ind.*, No. 94-cv-00756, 1995 WL 129229, at *2 (N.D. Cal. Mar. 21, 1995) (civil authority coverage not available to theater owners where theater access was limited due to dawn-to-dusk curfews in response to

---

[20] And, in any event, the presence of COVID-19 on property other than Plaintiffs' would not constitute "direct physical damage" to that property because the virus can be removed by cleaning. *Mastellone*, 2008-Ohio-311, ¶¶64-68; *See also Milkboy Center City LLC*, No. 2:20-cv-02036-TJS, ECF No. 14 at 16-17 (filed July 9, 2020).

rioting following the Rodney King verdict; curfews were imposed to prevent potential looting and rioting and not because of damage to adjacent property).[21]

In sum, Civil Authority Coverage does not apply.[22]

### 2.    The Communicable Disease Endorsement Does Not Apply.

Nor do Plaintiffs allege facts that would establish coverage under the Communicable Disease Endorsement.  *See* Exhibit 7.  That coverage is not triggered unless "a 'communicable disease' . . . *causes an actual illness __at the insured premises__*."  *Id.* (emphasis added).  Here, Plaintiffs do not allege that there was any illness on the premises, much less that such illness caused their businesses to close or otherwise caused them financial losses.  Although Plaintiffs generally allege that unidentified individuals at unspecified locations showed "symptoms consistent with COVID-19," or "potentially had contact with someone diagnosed with COVID-19," they do not identify those individuals, the locations at which they were present, or the dates on which they were present at each Plaintiff's Covered Property.  *See* SAC ¶ 29.  Indeed, they expressly allege that they do not have test results demonstrating the same.  *Id.*, ¶30.  Moreover, the supposed "symptoms consistent with COVID-19" are general symptoms associated with any number of different conditions, diseases or infections, from hay fever to the common cold,  including "fever or chills, cough, shortness of breath, fatigue, muscle or body aches, sore throat, congestion or

---

[21] The court in *Syufy* offered an example of when civil authority coverage would apply: "A building next door to a Syufy theater is damaged by fire; for safety reasons, the civil authorities issue an order closing the Syufy theater during repairs to the adjacent building.  Any business loss suffered by Syufy … would be covered under the business interruption provision."  *Id.*, at *2 n.1.

[22] Moreover, Plaintiffs' claims for any continuing, future loss of business income or extra expenses sustained as a result of governmental orders requiring closure of their business (SAC ¶¶ 23, 68, 86-88), fail.  As alleged by Plaintiffs, the Governor of Ohio lifted the order requiring the closure of childcare provider businesses on May 14, 2020.  (SAC ¶ 51).  Thus, any business losses sustained after May 14, 2020 are due to Plaintiffs' voluntary closure and are not the result of government orders.  *Hastings Mut. Ins. Co. v. Mengel Dairy Farms, LLC*, No. 5:19CV1728, 2020 WL 2542122, at *6 (N.D. Ohio May 19, 2020) (court construed the "necessary suspension of your operations" language to require a complete cessation of all business activities).

runny nose." And the presence of individuals who "potentially had contact with someone diagnosed with COVID-19" hardly establishes the existence of an outbreak at the premises, much less an order shutting down the business as result of actual illness at the premises. Such allegations simply do not state a claim under the Communicable Disease Endorsement.

### 3. The Virus Exclusion Precludes Coverage As To Seven Plaintiffs.

Independently, the Policies issued to Dublin, New Albany, Tuttle Crossing, Gahanna, Powell, Chagrin Falls, and Westerville III contain a clear and unequivocal Virus Exclusion excluding any "loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." (Ex. 8, p. 1). These Policies also include a notice highlighting the significance of the Virus Exclusion and encouraging Plaintiffs to read all the Policy endorsements carefully. (Ex. 9). The Virus Exclusion unequivocally "applies to all coverage under all forms and endorsements that comprise this Coverage Part or Policy, including but not limited to forms or endorsements that cover property damage to buildings or personal property and forms or endorsements that cover business income, extra expenses or action of civil authority." (*Id.* at p. 1). To the extent Plaintiffs have alleged any facts regarding their alleged loss, that loss clearly results from a "virus . . . that induces or is capable of inducing physical distress, illness or disease." *Id.* Thus, on its face, the Virus Exclusion independently bars the claims asserted by Dublin, New Albany, Tuttle Crossing, Powell, and Gahanna. *See Lambi v. Am. Family Mut. Ins. Co*., 498 Fed. Appx. 655, 656 (8th Cir. 2013) (finding similar virus exclusion clearly and unambiguously excluded liability coverage); *Doe v. State Farm Fire & Cas. Co*., No. 2015-0136, 2015 WL 11083311 (Sup. Ct. N.H. Sept. 21, 2015), *1-2 (holding the same based upon cases from across the nation). [23]

---

[23] While Ohio courts have apparently not yet addressed the Virus Exclusion, they have found other categorical damages exclusions to be clear, unambiguous and enforceable. *See e.g. The Landings*

**4.      Plaintiffs' Bad Faith Claim (Count II) Fails As A Matter Of Law.**

Because Plaintiffs have failed to allege facts showing that they are entitled to coverage under the Policies, their Bad Faith claim necessarily fails. *Gehrisch v. Chubb Group of Ins. Cos.*, 645 Fed. App'x. 488, 494 (6th Cir.2016) (if the insured's breach of contract claim fails, so does his bad faith claim); *Bondex Intl., Inc. v. Hartford Acc. & Indem. Co.*, 677 F.3d 669, 684 (6th Cir. 2011) ("the district court properly treated the bad faith claim as a contingent claim that fell with [the insured's] primary coverage claims"). *See also Wright State Physicians, Inc. v. Doctors Co.*, 2016-Ohio-8367, 78 N.E.3d 284, ¶28 (2nd Dist. Dec. 23, 2016) (no bad faith without coverage); *Boughan v. Nationwide Property & Casualty Co.*, 3rd Dist. No. 1-04-57, 2005-Ohio-244, ¶19 ("The [insureds] also argue that [the insurer] breached a good faith duty to handle their claim.  This argument is precluded by our holding that the damage was not covered under the homeowners' policy."); *Bob Schmitt Homes, Inc. v. Cincinnati Ins. Co.*, 8th Dist. No. 75263, 2000 WL 218379, at *4 (Feb. 24, 2000) ("[The insured] has failed to satisfy its burden of showing that it is entitled to coverage under the [policy].  Therefore, since the initial factual prerequisite to this claim is lacking, summary judgment in favor of [the insurer] on [the insured's] bad faith claim was appropriate."); *Pasco v. State Auto Mut. Ins. Co.*, 10th Dist. No. 99AP-439, 1999 WL 1221633, at *6  (Dec. 21, 1999) ("given that [the] insurer's denial of coverage was proper, plaintiff's bad faith claim could not be maintained") (citing *GRE Ins. Group v. Intl. EPDM Rubber Roofing Sys., Inc.*, 6th Dist. No. L-98-1387, 1999 WL 253044 (Apr. 30, 1999)).

Independently, Plaintiffs' bad faith claim fails because PIIC had "reasonable justification" for denying Plaintiffs' claims. *Zoppo*, 71 Ohio St.3d at 554.  Jurisprudence regarding COVID-19

---

*of Walden Condo. Ass'n. v. Lumbermens Mut. Cas. Co.*, 11th Dist. No. 2004-P-0075, 2005-Ohio-4042, ¶¶34-76 (mold exclusion was valid and enforceable); *Allstate Ins. Co. v. Croom*, 8th Dist. No. 95508, 2011-Ohio-1697, ¶¶6-14 (lead exclusion was valid and enforceable); *Murray v. All American Ins. Co.*, 121 Ohio App.3d 29, 32-34, 698 N.E.2d 1027 (12th Dist. 1997) (water damage exclusion was valid and enforceable).  The result should be the same here.  _

related insurance claims is still developing.  There is certainly no binding authority holding that the language in the Policies covers business interruption losses related to COVID-19.  PIIC's coverage decision is therefore reasonably justified given the language in the Policies and the undeveloped state of the law at the time Plaintiffs submitted their claims.  *See Addington v. Allstate Ins. Co.*, 142 Ohio App. 3d 677, 681, 756 N.E.2d 750, 753 (2001) (bad faith claim failed because insurer's denial was reasonably justified in light of state of the law at time insurer denied claim, notwithstanding subsequent case law holding that claim was covered); *Florists' Mut. Ins. Co. v. Ludy Greenhouse Mfg. Corp.*, 521 F. Supp. 2d 661, 691 (S.D. Ohio 2007) ("A claim against an insurer will ***only*** survive, however, if the record shows that there were ***no*** circumstances in the case which could be viewed as creating a reasonable justification for that carrier's actions.") (emphasis added, quotations and citations omitted).  For that reason, even if coverage existed (which it does not), PIIC did not act in bad faith by denying Plaintiffs' claims.

## IV.    CONCLUSION

For all the reasons set forth above, the SAC should be dismissed in its entirety.

Respectfully submitted,

/s/ *Richard M. Garner*
Richard M. Garner (0061734)
Sunny Lane Horacek (0089178)
**Collins, Roche, Utley & Garner, LLC**
655 Metro Place South, Suite 200
Dublin, OH 43107
Telephone: (614) 901-9600
Facsimile: (614) 901-2733
Email: rgarner@cruglaw.com
        shoracek@cruglaw.com

*Attorneys for Defendant*
*Philadelphia Indemnity Insurance*
*Company*

Richard L. Fenton
**Dentons US LLP**
233 South Wacker Drive, Suite 5900
Chicago, IL  60606
Telephone: (312) 876-7442
Facsimile: (312) 876-7934

Jeffrey A. Zachman
**Dentons US LLP**
303 Peachtree Street NE
Suite 5300
Atlanta, GA  30308
Telephone: (404) 527-8442
Facsimile:  (404) 527-4198

*Counsel (PHV) for Defendant*
*Philadelphia Indemnity Insurance Company*

23

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 21, 2020, a copy of the foregoing was filed electronically.

Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

Parties may access this filing through the Court's system.

*/s/ Richard M. Garner*
**RICHARD M. GARNER** (0061734)

*Attorney for Defendant*
*Philadelphia Indemnity Insurance Company*

AND

Richard L. Fenton
**Dentons US LLP**
233 South Wacker Drive, Suite 5900
Chicago, IL  60606
Telephone: (312) 876-7442
Facsimile:  (312) 876-7934

Jeffrey A. Zachman
**Dentons US LLP**
303 Peachtree Street NE
Suite 5300
Atlanta, GA  30308
Telephone: (404) 527-8442
Facsimile:  (404) 527-4198

*Counsel (PHV) for Defendant*
*Philadelphia Indemnity Insurance Company*

24