**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

| | 100 EAST FIFTH STREET, ROOM 540 | |
|---|---|---|
| Deborah S. Hunt | POTTER STEWART U.S. COURTHOUSE | Tel. (513) 564-7000 |
| Clerk | CINCINNATI, OHIO 45202-3988 | www.ca6.uscourts.gov |

Filed: November 05, 2021

Mr. Wystan Michael Ackerman
Mr. Stephen E. Goldman
Robinson & Cole
280 Trumbull Street
Hartford, CT 06103-3597

Mr. Sean R. Alto
Mr. Charles Horne Cooper Jr.
Cooper & Elliott
305 W. Nationwide Boulevard
Columbus, OH 43215

Mr. Richard L. Fenton
Dentons
233 S. Wacker Drive
Suite 5900
Chicago, IL 60606

Mr. Timothy John Fitzgerald
Koehler Fitzgerald
1111 Superior Avenue, E., Suite 2500
Cleveland, OH 44114

Ms. Laura A. Foggan
Crowell & Moring
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004

Mr. Richard M. Garner
Ms. Sunny Lane Horacek
Collins, Roche, Utley & Garner
655 Metro Place, S., Suite 200
Dublin, OH 43016

Mr. Christopher E. Kozak
Plews, Shadley, Racher & Braun
1346 N. Delaware Street
Indianapolis, IN 46202

Mr. Jeffrey A Zachman
Dentons
303 Peach Street, N.E.
Suite 5300
Atlanta, GA 30308

       Re: Case No. 21-3245, *Dakota Girls, LLC, et al v. Philadelphia Indemnity Ins Co*
          Originating Case No. : 2:20-cv-02035

Dear Counsel,

 The court today announced its decision in the above-styled case.

 Enclosed is a copy of the court's opinion together with the judgment which has been entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

              Yours very truly,

              Deborah S. Hunt, Clerk


              Cathryn Lovely
              Deputy Clerk

cc: Mr. Richard W. Nagel

Enclosures

Mandate to issue.

RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 21a0250p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

---

DAKOTA GIRLS, LLC; DUBLIN ASHANIK, LLC; EDUCARE OF GREENE, INC.; CAMPBELL FAMILY CHILDCARE, INC.; LILLYPAD LEARNING CENTER, LLC; FUQUA NORMAN, INC.; EAGLE SCHOOL OF HILLIARD OHIO, INC.; POWELL ENTERPRISES, INC.; PARK ENTERPRISES OF OHIO, LLC; PARK SCHOOL OF DUBLIN, LLC; FIXARI SCHOOL OF PICKERINGTON, LLC; FIXARI SCHOOL OF REYNOLDSBURG, LLC; BURKHOLD ENTERPRISES, LLC; PARK SCHOOL OF GAHANNA, LLC; DiMUZIO-SPERANZA ENTERPRISES, INC.; CHAMBERS HOLDINGS, INC.,

    *Plaintiffs-Appellants*,

  *v.*

PHILADELPHIA INDEMNITY INSURANCE COMPANY,

    *Defendant-Appellee*.

No. 21-3245

---

Appeal from the United States District Court for the Southern District of Ohio at Columbus.
No. 2:20-cv-02035—Sarah Daggett Morrison, District Judge.

Decided and Filed: November 5, 2021

Before: SILER, KETHLEDGE, and BUSH, Circuit Judges.

---

**COUNSEL**

**ON BRIEF:** Charles H. Cooper, Jr., Sean R. Alto, COOPER & ELLIOTT, Columbus, Ohio, for Appellants. Stephen E. Goldman, Wystan M. Ackerman, ROBINSON & COLE LLP, Hartford, Connecticut, Richard M. Garner, COLLINS, ROCHE, UTLEY & GARNER, LLC, Dublin, Ohio, for Appellee. Christopher E. Kozak, PLEWS SHADLEY RACHER & BRAUN LLP, Indianapolis, Indiana, Timothy J. Fitzgerald, KOEHLER FITZGERALD LLP, Cleveland, Ohio, Laura A. Foggan, CROWELL & MORING LLP, Washington, D.C., for Amici Curiae.

---

**OPINION**

---

BUSH, Circuit Judge. To combat the spread of COVID-19, the Ohio government ordered child-care programs in the state to shut down for around two months beginning in March 2020. As a result, Dakota Girls, LLC and its sixteen co-appellants (collectively, "Dakota Girls") could not use their facilities for their intended purpose—as private preschools. The consequent lost profits gave rise to claims against their insurer, the Philadelphia Indemnity Insurance Company ("Philadelphia"). Dakota Girls argued that the preschools' identically worded policies contained four provisions—concerning (1) business and personal property, (2) business income, (3) civil-authority orders, and (4) communicable disease and water-borne pathogens—that provided coverage. Philadelphia disagreed, however, and denied the claims, so Dakota Girls filed suit. It sought damages for breach of contract and the insurer's alleged bad faith. Yet the district court sided with Philadelphia and granted its motion to dismiss. Dakota Girls then took the present appeal. Soon after, we issued a decision squarely foreclosing coverage under the first three of the aforementioned provisions, a point Dakota Girls now concedes. *See Santo's Italian Café v. Acuity Ins. Co.*, 15 F.4th 398 (6th Cir. 2021). It thus confines this appeal to the fourth provision, concerning communicable disease and water-borne pathogens. But Dakota Girls' arguments in favor of coverage fail under the plain language of the policies. So we affirm.

**I.**

In its complaint, Dakota Girls invoked four coverage provisions to argue that Ohio's shutdown order caused the preschools to suffer covered losses. First was their building-and-personal-property coverage, which covers "direct physical loss of or damage to Covered Property." Dakota Girls argued that "direct physical loss" is not restricted to mere dispossession, but also includes loss *of use* that resulted from the shutdown order. It also theorized that COVID-19 was itself "damaging surfaces" within the preschools' properties. The second provision was the business-income coverage, which covers income lost from a "'suspension' of 'operations' during the 'period of restoration' caused by [the] direct physical loss . . . or damage." Third was the civil-authority coverage. Unlike the first two provisions, it covers the

No. 21-3245   *Dakota Girls, LLC, et al. v. Philadelphia Indemnity Ins. Co.*   Page 3

income lost and expenses that result from a government order prohibiting access to covered property due to damage at some *other* location. And last was the communicable-disease and water-borne-pathogen provision, which covers the income lost and expenses that result from a shutdown order in response to "an actual illness at the insured premises." Though Dakota Girls could not confirm that a COVID-positive individual was ever at the preschools, it at least alleged that people with symptoms "consistent with" the disease had been there.

Those arguments, however, failed to persuade the district court. While it acknowledged that COVID "and the Closure Orders have had a devastating impact on many businesses," the district court nonetheless held that "Plaintiffs cannot plausibly allege that this impact is covered under the Policies as written." That was so because none of the provisions—at least as the district court understood them—covered Dakota Girls' theories of harm. Without a material change in the property's condition, there could not have been "damage." Without dispossession or the property's destruction, there could not have been "loss." And without proof that someone with COVID was ever on the premises, there could not have been an "actual illness" at the preschools. (The district court also declined to reach the import of a "virus exclusion" found in seven of the policies because it held that those policies did not provide coverage in the first place.) The district court thus granted Philadelphia's motion to dismiss. On appeal, Dakota Girls argues that the district court misread the policies, misunderstood Ohio law, and erroneously denied coverage.

## II.

There are two general issues here to which a standard of review is relevant: whether the district court's interpretation of the insurance policies was correct and whether the district court properly granted Philadelphia's motion to dismiss based on that interpretation. We review the first issue de novo and in accordance with the substantive law of Ohio, since this is a diversity case. *See Yellowbook Inc. v. Brandeberry*, 708 F.3d 837, 844 (6th Cir. 2013). We likewise review the second, procedural issue—whether Dakota Girls plausibly pleaded its entitlement to relief under that contractual interpretation—de novo. *See SFS Check, LLC v. First Bank of Del.*, 774 F.3d 351, 355 (6th Cir. 2014). Thus, as did the district court, we ask whether Dakota Girls' complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is

No. 21-3245 *Dakota Girls, LLC, et al. v. Philadelphia Indemnity Ins. Co.* Page 4

plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2009)). In so doing, we disregard bare legal conclusions and "naked assertion[s]," affording the presumption of truth only to genuine factual allegations. *Id.* (quoting *Twombly*, 550 U.S. at 557). In other words, we need not "accept as true a legal conclusion." *Id.* Nor should we credit a "[t]hreadbare recital of the elements of a cause of action . . . supported by mere conclusory statements." *Id.* (citing *Twombly*, 550 U.S. at 555). Ultimately, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679 (citing *Twombly*, 550 U.S. at 556).

### III.

We begin with Dakota Girls' claims to coverage under the business-and-personal-property, business-income, and civil-authority provisions. All of those are triggered by either "loss of" or "damage to" property—whether to the covered property itself or to other property around the covered property. At first, the parties sharply contested the meaning of that phrase. Philadelphia argued that "loss" refers to the complete destruction of property or to the owner's dispossession, while "damage" requires some tangible, adverse change in the property's condition. Dakota Girls, by contrast, argued that "loss" is sufficiently broad to encompass loss *of use*—the inability to use a structure for the desired purpose. It thus contended that the shutdown order had caused a covered "loss" under the policy. And it likewise suggested that COVID-19, merely through its supposed presence, was somehow "damaging surfaces" within its properties.[1]

Ohio law governs our interpretation of "loss" and "damage." *See Santo's Italian Café*, 15 F.4th at 400. As the parties acknowledge, the Ohio Supreme Court has rendered no on-point decision. But in a similar case—*Santo's Italian Café v. Acuity Insurance Co.*—we recently made an *Erie* prediction about how it *would* define those terms. *See id.* at 404. Relying on dictionaries, a leading treatise, and Ohio intermediate-appellate-court precedent, we reasoned that the Ohio Supreme Court likely would *not* endorse Dakota Girls' interpretation. *Id.*

---

[1]Even if Dakota Girls had properly pleaded this allegation, its "damage" claim would fail under our precedent for the reasons that we explain above. But we pause here to note the contradiction in Dakota Girls' complaint—that it could not confirm that anyone with COVID was ever on the covered premises, yet that COVID was also somehow "damaging surfaces" within.

No. 21-3245      *Dakota Girls, LLC, et al. v. Philadelphia Indemnity Ins. Co.*      Page 5

at 402–04.  To the contrary, we held that it would require either destruction of the property or the owner's dispossession to show "loss" and a direct physical alteration of the property to show "damage."  *Id.* at 404.  The policy language thus excludes from coverage the mere economic injury and loss of use that result from a shutdown order.  *Id.* at 402.  In short, as we explained, "[a] loss of use simply is not the same as a physical loss."  *Id.*

Dakota Girls concedes that *Santo's* is "controlling authority" and resolves all its claims other than those under the communicable-disease provision.  Indeed, Dakota Girls did not suffer dispossession or the destruction of its property, nor did it plead that COVID-19 had materially altered the facilities' condition.  Under our circuit's view of Ohio law, then, the preschools cannot establish the "loss" or "damage" required to trigger the first three coverages.  So, as to those coverages, we affirm the district court's grant of Philadelphia's motion to dismiss.

**IV.**

We turn next to Dakota Girls' bid for coverage under the communicable-disease and water-borne-pathogen provision.  It covers the losses that result when the government orders a shutdown of business operations "due directly to an outbreak of a communicable disease or a water-borne pathogen that causes an actual illness at the described premises[.]"  Though everyone agrees that COVID-19 is a "communicable disease,"[2] this coverage still presents two interpretive issues.  First, is the endorsement triggered simply when there is a shutdown order in response to a communicable disease found *somewhere*?  Or does it require a shutdown order in response to a communicable disease that caused an "actual illness" *at the premises*?  Dakota Girls argues for the former, which would significantly expand coverage, while Philadelphia says it must be the latter.  There is no on-point decision from the Ohio Supreme Court here either, so once again we will predict how it would likely settle that dispute.  Second, based on our prediction of Ohio law, did Dakota Girls plausibly plead that Ohio's statewide shutdown order resulted from an "actual" COVID-19 illness at its premises?  We take those questions in turn.

---

[2]Indeed, Philadelphia conceded that COVID is a "communicable disease" under the policy.

No. 21-3245     *Dakota Girls, LLC, et al. v. Philadelphia Indemnity Ins. Co.*     Page 6

### A.     The Communicable-Disease and Water-Borne-Pathogen Provision

According to Dakota Girls, the communicable-disease and water-borne-pathogen provision has two distinct triggers that differ radically in their scope. On one hand, coverage kicks in when there is a shutdown order "due directly to an outbreak of a communicable disease." That reading would cover *any* communicable-disease-related shutdown order that affects the insured premises, no matter whether an infected person was ever present. On the other hand, Dakota Girls says, coverage starts when there is a shutdown order "due directly to an outbreak of . . . a water-borne pathogen that causes an actual illness at the insured premises." So, unlike the expansive view of the "communicable disease" trigger, the "water-borne pathogen" trigger trips *only* when there is an "actual illness" from a "water-borne pathogen" *at the premises*. Dakota Girls claims that this delinking of "communicable disease" and "actual illness" flows from the "fundamental rules of grammar."

Though Dakota Girls never frames it in these terms, its point is really about the applicability of the last-antecedent rule—the presumption that "qualifying words and phrases . . . refer solely to the last antecedent."³ *Wohl v. Swinney*, 113 Ohio St. 3d 277, 279, 888 N.E.2d 1062, 1065 (Ohio 2008). Here, the "qualifying phrase" would be "that causes an actual illness at the insured premises," while the last antecedent is "water-borne pathogen." The last-antecedent rule thus seems to support Dakota Girls' reading. Yet despite that presumption's superficial relevance to this dispute, a couple of important caveats reveal why it cannot carry the day.

First, the presumption falls away when the modifying terms follow a "concise and 'integrated' clause." *Cyan, Inc. v. Beaver Cty. Emp. Ret. Fund*, 138 S. Ct. 1061, 1077 (2018); *Jama v. Immigration & Customs Enf't*, 543 U.S. 335, 344 n.4 (2005); *see also Averback v. Montrose Ford, Inc.*, 120 N.E.3d 125, 133 (Ohio Ct. App. 2019) ("[A]n antecedent can be a word, *phrase*, or *clause*.") (emphasis added). For instance, consider this expression: "receives, possesses, or transports in commerce." The modifying phrase there—"in commerce"—is properly read to modify not just the literal last antecedent—"transports"—but *all* terms in the

---
³Philadelphia, by contrast, correctly recognizes the canon's relevance.

No. 21-3245   *Dakota Girls, LLC, et al. v. Philadelphia Indemnity Ins. Co.*   Page 7

integrated list—"receives, possesses, or transports." *Jama*, 543 U.S. at 344 n.4. Second, and relatedly, the presumption does not apply when surrounding context suggests a "contrary intent." *Wohl*, 888 N.E.2d at 1065 ("[I]f there is contrary evidence that demonstrates that a qualifying phrase was intended to apply to more than the term immediately preceding it, we will not apply the last-antecedent rule so as to contravene that intent. Before applying the last-antecedent rule, we must therefore examine the contract as a whole to determine whether any contrary intent appears.").

Each of those caveats defeats Dakota Girls' argument. "[C]ommunicable disease or a water-borne pathogen" is a "concise and 'integrated'" phrase that simply lists two examples of the same phenomenon—disease. *See Cyan, Inc.*, 138 S. Ct. at 1077 (declining to apply the last-antecedent rule when the entire phrase "referr[ed] to a single thing"). The actual phrase is thus distinct from some hypothetical list (say, a shutdown order due to "a tornado, armed uprising, or water-borne pathogen that causes actual illness") where the list's terms lack a conceptual relationship. And the policy's surrounding text and context likewise refute the claim that we should sever "communicable disease" from "actual illness." Dakota Girls never explains, much less convincingly so, why the drafters would have made one coverage trigger super-broad and the other super-narrow. Moreover, the relevant "period of restoration" provision explains that coverage kicks in "24 hours after the jurisdictional Board of Health closes your 'operations' and *your premises are evacuated due to illness* caused by an outbreak *of a 'communicable disease,'* or a 'water-borne pathogen.'" That provision reflects that the illness must be both from a communicable disease *and* at the premises to have triggered the coverage. Reading the communicable-disease coverage to *not* require an actual illness at the premises, therefore, would engender serious inconsistency within the policy. So Philadelphia is correct that Dakota Girls needed to plausibly plead that there was an "actual illness" at the premises from the "communicable disease," COVID-19.

B.  **Application of Communicable-Disease and Water-Borne-Pathogen Provision to Facts Plausibly Pleaded in the Complaint**

Under this correct understanding of the policy—that the shutdown order had to be "due directly to an outbreak of a communicable disease . . . that causes an actual illness at the insured

premises"—Dakota Girls' complaint fails for two reasons. First, it did not plausibly plead that there was an "actual illness" from COVID-19 at the covered facilities. Second, even if it had met that burden, it never plausibly pleaded that the statewide shutdown order was "due directly" to anything that happened at its "insured premises." Indeed, there was no allegation that Ohio's Director of Health had ever even heard of Dakota Girls or the other preschools in this case.

As to the "actual illness" point, Philadelphia notes that Dakota Girls never alleged that someone in the preschools actually had COVID-19. Instead, the complaint stated that "[e]ach school had individuals on their premises with symptoms *consistent with* COVID-19" and later conceded that Dakota Girls had no "confirmation" of COVID's presence. Dakota Girls' opening brief defends that concession by claiming that it would have been "impossible" to allege that someone at the preschools actually had COVID since "widespread testing was" then "unavailable." But sick individuals from the preschools still could have received a differential diagnosis from a physician, even if tests were uncommon. Dakota Girls also could have alleged on information and belief that the sick individuals on the premises had COVID, and it then could have bolstered that allegation through discovery. What it could *not* do, though, is allege only that individuals had symptoms "consistent with" COVID. As the Supreme Court has explained, allegations that are "'merely consistent with' a defendant's liability . . . 'stop[ ] short of the line between possibility and plausibility of "entitlement to relief."'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

Dakota Girls also never alleged that Ohio's statewide shutdown order arose "directly" (or even indirectly) from an illness *at the premises*. Nor could it have. The Director of Health's order was framed in general terms and applied to all "Facilities Providing Child Care Services." It was also couched as a prophylactic measure "to avoid an imminent threat with a high probability of widespread exposure to COVID-19," not as a response to a specific illness discovered at appellants' preschools or anywhere else.

Given that analysis, we also reject Dakota Girls' fallback contention that the communicable-disease provision is at least "ambiguous" and that we should construe the "ambiguity" in favor of the policyholder. Dakota Girls misunderstands the relevant principles of Ohio law. A contract's failure to define every term does not make it "ambiguous."

No. 21-3245           *Dakota Girls, LLC, et al. v. Philadelphia Indemnity Ins. Co.*           Page 9

*Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm*, 73 Ohio St. 3d 107, 108, 652 N.E.2d 684, 686 (Ohio 1995). Nor is a term ambiguous just because there are "multiple readings." *State v. Porterfield*, 106 Ohio St. 3d 5, 7, 829 N.E.2d 690, 692–93 (Ohio 2005). Instead, we must determine the terms' *ordinary* meaning from other indicia, like the context of the broader policy. *See Cincinnati Ins. Co. v. CPS Holdings Inc.*, 115 Ohio St. 3d 306, 307, 875 N.E.2d 31, 34 (Ohio 2007) ("We examine the insurance contract as a whole[.]"). We reject ordinary meaning only when it would create absurdity or when the parties clearly intended some other definition. *Id.* at 34; *see also Sunoco, Inc. (R&M) v. Toledo Edison Co.*, 129 Ohio St. 3d 397, 403–05, 953 N.E.2d 285, 292–93 (Ohio 2011). And we should declare a policy "ambiguous" only after our interpretive tools reveal no "definite legal meaning." *Cincinnati Ins. Co.*, 115 Ohio St. 3d at 308, 875 N.E.2d at 34. Only then may we turn to tools of *construction*, like the notion that we should construe ambiguity in favor of policyholders. *See Porterfield*, 106 Ohio St. 3d at 7, 829 N.E.2d at 692–93 ("Only when a definitive meaning proves elusive should rules for *construing* ambiguous language be employed.") (emphasis added).

Here, of course, we have no need for an ambiguity tiebreaker. As we have just shown, the policy has a definite legal meaning—that coverage is triggered only by a shutdown order that stemmed from an actual illness caused by a communicable disease *at the preschools*. That meaning precludes Dakota Girls' bid for coverage under the communicable-disease provision.[4] So we affirm dismissal of the complaint as to this coverage as well.

---

[4]We also reject Dakota Girls' claim that Philadelphia, in effect, waived its current arguments against communicable-disease coverage by sending the insureds a letter explaining that it would reimburse them "for the cost of disinfecting the insured premises due to reported symptoms of COVID-19 within the premises." Even assuming the letter conflicts with Philadelphia's current arguments, the letter would not have "waived" those arguments under Ohio law, since Philadelphia included within it an extensive reservation of rights. *See Leader Nat'l Ins. Co. v. Eaton*, 119 Ohio App. 3d 688, 692, 696 N.E.2d 236, 239 (Ohio Ct. App. 1997) ("Payment of a claim of a person injured by an insured, with knowledge of a potential coverage defense *and without any reservation of rights*, waives the defense.") (emphasis added); *see also Nationwide Ins. Co. v. Ali*, 178 Ohio App. 3d 17, 25, 896 N.E.2d 742, 748 (Ohio Ct. App. 2008) ("A reservation-of-rights letter from an insurer is a notice that even though the company is proceeding to handle the claim, certain losses might not be covered by the terms of the policy. By such a letter, the company preserves or 'reserves' its right to deny coverage at a later date based on the terms of the policy.") (citing *Mastellone v. Lightning Rod Mut. Ins. Co.*, 175 Ohio App. 3d 23, 884 N.E.2d 1130 (Ohio Ct. App. 2008)).

V.

Because of our holding above, we need not rule on the effect of the "virus exclusion" contained in seven of appellants' policies. That clause purports to remove coverage for "any loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." The district court declined to consider the significance of the virus exclusion, reasoning that no coverage existed in the first place for the clause to exclude. We agree. Because Dakota Girls never established its initial entitlement to coverage, we need not consider what consequences for that coverage might have arisen from the virus exclusion.

Our ruling also disposes of Dakota Girls' claim that Philadelphia's denial of coverage was done in bad faith. Even if the denial of coverage had been erroneous, the mere wrongful denial of a claim is not actionable under Ohio law. Rather, "[a]n insured must prove that the insurer's refusal to pay a claim was totally arbitrary and capricious and without reasonable justification." *Spremulli's Am. Serv. v. Cincinnati Ins. Co.*, 91 Ohio App. 3d 317, 322, 632 N.E.2d 599, 601 (Ohio Ct. App. 1992); *see also Hoskins v. Aetna Life Ins. Co.*, 6 Ohio St. 3d 272, 276, 452 N.E.2d 1315, 1320 (Ohio 1983) (explaining that the insured must show "dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud"). Dakota Girls has never shown that it even had coverage, much less that Philadelphia's agents knew it had coverage or that coverage was so obvious it could not have been reasonably denied.

VI.

Like the *Santo's* court, we appreciate the "singular challenges" that COVID-19 has caused for businesses like Dakota Girls. *Santo's Italian Café*, 15 F.4th at 407. But those challenges do not give us license to rewrite the plain terms of an insurance policy to confer upon the appellants a form of coverage for which they never contracted. We affirm.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 21-3245

DAKOTA GIRLS, LLC; DUBLIN ASHANIK, LLC; EDUCARE OF GREENE, INC.; CAMPBELL FAMILY CHILDCARE, INC.; LILLYPAD LEARNING CENTER, LLC; FUQUA NORMAN, INC.; EAGLE SCHOOL OF HILLIARD OHIO, INC.; POWELL ENTERPRISES, INC.; PARK ENTERPRISES OF OHIO, LLC; PARK SCHOOL OF DUBLIN, LLC; FIXARI SCHOOL OF PICKERINGTON, LLC; FIXARI SCHOOL OF REYNOLDSBURG, LLC; BURKHOLD ENTERPRISES, LLC; PARK SCHOOL OF GAHANNA, LLC; DIMUZIO-SPERANZA ENTERPRISES, INC.; CHAMBERS HOLDINGS, INC.,

> Plaintiffs - Appellants,

v.

PHILADELPHIA INDEMNITY INSURANCE COMPANY,

> Defendant - Appellee.

**FILED**
Nov 05, 2021
DEBORAH S. HUNT, Clerk

Before: SILER, KETHLEDGE, and BUSH, Circuit Judges.

## JUDGMENT

On Appeal from the United States District Court
for the Southern District of Ohio at Columbus.

THIS CAUSE was heard on the record from the district court and was submitted on the briefs without oral argument.

IN CONSIDERATION THEREOF, it is ORDERED that the judgment of the district court is AFFIRMED.

**ENTERED BY ORDER OF THE COURT**

Deborah S. Hunt, Clerk